813 A.2d 792

**Barbara Ann Marie RYAN, Appellant,**

**v.**

**I. Joel BERMAN, D.O., and Morris I. Rossman, D.O., and Regional Internal Medicine Associates, Ltd., and Joel D. Jaffe, M.D., and Leon M. Cattolico, D.O., and henry ditommaso, D.O., Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2001.

Decided Dec. 31, 2002.

158

George J. O'Neill, Philadelphia, for Barbara Ann Ryan.

Donald J. Brooks, Philadelphia, for Henry DiTommaso and Leon M. Cattolico.

Gary M. Samms, Fort Washington, for I. Joel Berman.

Mary Grady Walsh, Kevin H. Wright, George L. Young, Philadelphia, for Joel D. Jaffe, M.D.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Chief Justice ZAPPALA.

This case requires application of the coordinate jurisdiction rule and an examination of circumstances when the rule does not apply. We must decide whether the trial court violated the rule.

Appellant, Barbara Ann Marie Ryan, instituted a medical malpractice action in 1985 against Doctors Cattolico and Di-Tommaso, her family doctors, and against Doctors Berman, Rossman, and Jaffe, consulting specialists, alleging negligent failure to diagnose Cushing's Syndrome, a rare adrenal disorder that results in elevated levels of the hormone cortisol. This had allegedly necessitated surgery in 1984 to remove a kidney and an attached adrenal tumor. In addition, her complaint alleged that the disease prolonged and exacerbated injuries she suffered when a baking rack fell on her at work in April 1982.

In 1984, she instituted a products liability action in regard to the work-related injury. In 1989, she settled the products liability case and executed a release of claims for injuries and their consequences arising from the accident at work.

Appellees, the defendant doctors, learned of the release and moved to amend their answers in the malpractice action to plead the release. They also moved for summary judgment, asserting that the release barred the malpractice action. Judge Gordon denied both motions. Appellees filed a motion for extraordinary relief wherein they again sought leave to amend their answers to the complaint and to move for summary judgment. The motion for extraordinary relief was heard by a different judge of the same court, the Court of Common Pleas of Philadelphia County, who granted both motions and dismissed the malpractice action.

Appellant appealed. The Superior Court reversed. It held that the coordinate jurisdiction rule prohibited the actions of the second judge.

On remand, the case went to trial before Judge Field. During trial, the defendant doctors again moved to amend their answers to incorporate the release. Judge Field took the motion under advisement.

At the close of the plaintiff's case-in-chief, Judge Field permitted the doctors to amend their answers and to plead the release in the product liability action; she held that the release did not entirely bar the malpractice action but only the portion that occurred after the work-related accident.

The plaintiff filed post-trial motions. Judge Field granted the motions in part: she vacated the entry of nonsuit as to Doctors Cattolico and DiTommaso, Appellant's family doctors, on the basis that the Appellant's medical expert's testimony had been unduly limited at trial. Judge Field denied post-trial motions pertaining to the remaining doctors, consulting specialists Berman, Rossman, and Jaffe, thus leaving in effect the nonsuit affecting them.

The plaintiff appealed. The Superior Court affirmed that portion of the trial court's order allowing amendment of the

defendant doctors' answers to include the release. The court went on, however, to hold that the release barred the malpractice action against Doctors Cattolico and DiTommaso, the family doctors, as well as the action against the consulting specialists. Therefore, the Superior Court reversed the portion of the trial court's order that held otherwise. The net result was that the plaintiff, Barbara Ann Marie Ryan, was nonsuited with respect to all the defendants and was out of court entirely.

The issue here is whether Judge Field violated the coordinate jurisdiction rule when she overruled the prior decision of Judge Gordon of the same court in granting the defendant doctors' motion to amend their answers to the complaint.[1]

The coordinate jurisdiction rule prohibits a judge from overruling the decision of another judge of the same court, under most circumstances. There are, however, situations when the rule does not apply. This Court stated recently that "a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in facts or the law clearly warrant a new look at the question." *Goldey v. Trustees of University of Pennsylvania,* 544 Pa. 150, 675 A.2d 264, 267 (1996). Nevertheless, we recognized that "where the motions differ in kind, as preliminary objections differ from ... motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Id.*

We clarified this in *Riccio v. American Republic Ins. Co.,* 550 Pa. 254, 705 A.2d 422 (1997). We distinguished *Riccio* from *Goldey* on the basis that in *Riccio* the purposes of the rulings made by the trial judge and the post-trial motions judge were different. We concluded:

Because the post-trial motion process is distinct procedurally from that of rendering a verdict following a non-jury trial and because the considerations of the judge are different at

1. See *Gerrow v. John Royle & Sons,* No. 5 EAP 2001, 2002 WL 31915024 (Pa.2002), for additional discussion and application of the coordinate jurisdiction rule.

each procedural stage ... we hold that the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process.

*Id.* at 425–26.

This case is not necessarily controlled by either *Goldey* or *Riccio.* It has some aspects akin to each of those cases, but is distinguishable in some respects from each. We will therefore consider the purposes of the rule in order to decide whether or not it should be applied in the circumstances of this case.

▅▅▅▅ The salient case on the coordinate jurisdiction rule is *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995). It states the rule as follows: "[J]udges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Id.* at 1331. "Departure ... is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The rule serves "not only to promote the goal of judicial economy" but also "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* at 1331. It is manifest that a judge may not lightly overrule the prior decision of another judge of the same court. In some circumstances, however, application of the rule can "thwart the very purpose the rule was intended to serve, *i.e.,* that judicial economy and efficiency be maintained." *Salerno v. Philadelphia Newspapers, Inc.,* 377 Pa.Super. 83, 546 A.2d 1168, 1170 (1988). Thus we said in *Starr* that departure from the rule of coordinate jurisdiction is allowed "where the prior holding was clearly erroneous and would create a manifest injustice if followed." 664 A.2d at 1332. Applying the rule of coordinate jurisdiction too rigidly, therefore, can undermine the purposes which justify the rule.

■ In applying the rule, it is important to keep in mind its purposes and to recognize circumstances which make application of the rule inappropriate. In this case, as in *Riccio*, the procedural posture of the case was quite different at the time the two different decisions were made; the judge who presided over the trial was in a superior position to reevaluate the question of the products liability release and its relation to the medical malpractice case than was the pretrial judge who made the initial decision. During the trial of the plaintiff's case-in-chief, abundant evidence was presented which established that Appellant was seeking damages in this case for injuries suffered in the work-related products liability case; this supported the conclusion that the release in the products liability case barred the damages, or some of them, sought in this case.[2] Thus, under the rationale of *Riccio*, the rule of coordinate jurisdiction did not apply, and it was not improper for Judge Field to permit the defendant doctors to amend their answers to the complaint to incorporate the plaintiff's release in the products liability case, even though Judge Gordon had denied permission at an earlier stage of the proceedings.

We therefore affirm the order of the Superior Court.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice NIGRO files a concurring opinion.

Justice SAYLOR files a concurring opinion.

NIGRO, Justice, concurring.

While I agree with the majority that Judge Field did not violate the coordinate jurisdiction rule when she overruled Judge Gordon's decision by granting Appellees' renewed mo-

2. This Court granted allocatur on a limited basis to consider only the question of whether the trial court violated the rule of coordinate jurisdiction. The question of the scope of the release and its effect on the medical malpractice litigation is not before us; we have not reviewed the Superior Court's resolution of this question and do not disturb its holding.

tion to amend their answers to the complaint, I disagree with the majority's analysis in reaching that result. In particular, I disagree with the majority's primary reliance on this Court's decision in *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422 (1997).

In *Riccio*, this Court held only that the coordinate jurisdiction rule does not "bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process." *Id.* at 426. We grounded that decision on the simple fact that the entire purpose of the post-trial motion process is to permit the trial court to correct its own errors prior to review by an appellate court. As we explained: "To not allow a judge deciding post-trial motions to overrule legal errors made during the trial process . . . would render the post-trial motion rules meaningless and the post-trial motion process would become nothing more than an exercise in futility." *Id.*

Unlike *Riccio*, the instant case does not involve the reconsideration of an issue on post-trial motions. The majority nevertheless believes *Riccio* to be applicable, apparently understanding it to stand for the broader proposition that departure from the coordinate jurisdiction rule is appropriate any time the procedural posture of the case has changed and a subsequent judge is in a "superior position to reevaluate" the motion. Majority Op. at 795. However, in *Riccio*, we gave no consideration to whether the post-trial motions judge had superior information from which to ascertain the correct resolution of the issue before him and I would not extend the rule in that case to incorporate such considerations. In addition, I do not read *Riccio* to in any way bar the application of the coordinate jurisdiction rule when two motions of the same kind are filed prior to post-trial proceedings. Rather, under those circumstances, I believe that the court must apply the standard set forth in *Goldey v. Trustees of University of Pennsylvania*, and consider whether an "intervening change in facts or the law clearly warrant a new look at the question." 544 Pa. 150, 675 A.2d 264, 267 (1996). That said, in my view, the

"change in facts" exception set forth in *Goldey* clearly applies here.[1]

In *Goldey*, this Court specifically stated that under the coordinate jurisdiction rule, "a later motion should not be entertained or granted when a motion of the same kind has previously been denied, *unless intervening changes in facts or the law clearly warrant a new look at the question.*" 675 A.2d at 267 (emphasis added.) Where, as here, the "later motion" was a renewed motion to amend, any changes in the underlying facts are of particular significance because a change in facts is precisely what triggers a party's right to amend. *See* Pa. R.Civ. P. 1033. Moreover, a change in facts sufficient to trigger the right to amend can occur *"at any time"* in the proceedings, based on new evidence either "offered or admitted."[2] *Id.* (emphasis added). When such a change of facts occurs, "the right to amend should be liberally granted ... unless there is an error of law or resulting prejudice to an adverse party." *Connor v. Allegheny General Hosp.*, 501 Pa. 306, 461 A.2d 600, 602 (1983)(quoting *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267, 270 (1963)). Under the "error of law" exception, "a court is not required to allow amendment of a pleading if a party will be unable to state a claim on which relief could be granted." *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331, 1338 (1996).

Here, the first trial judge, without explanation, denied Appellees' motion to amend on the eve of trial, before he had heard any testimony. At the same time that he did so, the

1. In addition, as I believe that *Goldey*'s "change in facts" exception applies, I would not resort to reliance on the purported "manifest injustice" exception to the coordinate jurisdiction rule, which is questionably grounded in dicta in *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1332 (1995). *See Gerrow v. John Royle & Sons*, J–124–2001 (Nigro, J, dissenting).

2. Specifically, Rule 1033 provides:

A party, either by consent of the adverse party or by leave of court, may *at any time* ... amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. *An amendment may be made to conform the pleading to the evidence offered or admitted.*

Pa. R.Civ. P. 1033 (emphases added).

judge issued an order denying a motion for summary judgment that Appellees had filed based on the release "on the basis that there exist genuine issues of material fact as stated in Pa. R.C.P. 1035." 6/2/92 Summary Judgment Order. This second order strongly suggests that the court was not ruling out the possibility that future factual developments might provide the justification necessary for both amendment of the pleadings and entry of judgment in Appellees' favor based on that release.[3] However, when the second trial judge subsequently granted the motion to amend, it was again on the eve of trial, before the court had heard any testimony and, thus, the factual record was unchanged. Under these circumstances, the second judge had no factual or legal basis on which to overrule the first judge, and the Superior Court properly reversed and remanded under the coordinate jurisdiction rule.

When the parties returned to the trial court, with a third trial judge now presiding, Appellees again moved to amend, arguing that they were "now at a different stage of trial," and, thus, were entitled to relief. N.T., 9/4/98, at 2. Given that the parties were once again at the very same point in the proceedings as they had been the first two times that they moved to amend, and the underlying record facts had not changed in any way, Judge Field rightly refused to grant the renewed motion, explaining on the first day of trial that:

> You [the Appellees] don't like this case. You don't like Judge Gordon's ruling. There's nothing I can do to change it. You don't have any changed circumstances.

N.T., 9/4/98, at 10. Shortly thereafter, Judge Field reiterated her rationale and invited the parties to renew their motion "at a more appropriate time," after evidence had been presented to flesh out the issues presented in the motion:

> I feel at this time we are basically where Judge Gordon was when he made his decision, and I do not see any way that I could do anything different at this time. That is not to

**3.** In response to the motion to amend, Appellant Barbara Ann Marie Ryan argued, *inter alia*, that the release did not provide a valid defense and, thus, the proposed amendment would be futile.

preclude you from making a similar motion at a more appropriate time. And I think that there are enough sufficient reasons to consider a hearing, at least a portion of the evidence in this case, too. I think there are some questions in there that at least would require some hearing. So we may come back and reexamine it, but I wanted to be very up [front] with you on it. . . . [T]he timing of the case leads me to believe that at least some evidence should be heard in this case.

N.T., 9/8/98, at 3–4.

In the days of trial that followed, the facts in support of Appellees' release defense and the motion to amend were developed and refined. In particular, Appellees developed persuasive record evidence that Appellant sought to collect damages in the medical malpractice action that had, in fact, resulted from her work injury and, thus, were barred by the plain language of the release.[4] Appellant described at some length the work-related accident, explaining that a rack had fallen on her in a Pathmark supermarket bakery, causing serious injuries to her head, neck, back, arm, and shoulder. N.T., 9/14/98, at 186–88; N.T., 9/14/98, at 272–77. She testified that she was admitted into the hospital as a result of the accident and that she had not been able to work since that time. N.T., 9/14/98, at 199, 270–71; N.T., 9/15/98, at 68. Appellant also acknowledged at trial that she had instituted a products liability action in connection with her work injury, and that in that action, she alleged that the accident had caused, *inter alia*, injuries to her head, face, neck, back, shoulders, arms, joints, bones, and skin, as well as disfigurement, poor health, emotional distress, depression, and discomfort. N.T., 9/15/98, at 119–23. Meanwhile, in the medical malpractice action, Appellant sought to collect damages for the

4. The release provided that:
   IT IS A FULL AND FINAL RELEASE OF ALL CLAIMS and shall apply to ALL KNOWN AND UNKNOWN INJURIES and anticipated and unanticipated injuries and damages resulting, or to result, or which might result from said accident, casualty or event, as well as to those now known or disclosed.
   Release, at 1 (emphasis in original).

"symptoms of Cushing's Syndrome," including certain weight gain, a so-called "moon face," skin discolorations, weakness, bone pain, a hump on her back, and facial hair.[5] Not only did Appellant admit at trial that these "Cushing's Syndrome symptoms" did not surface until *after* her work-related accident, N.T., 9/15/98, at 68–70; N.T., 9/14/98, at 196; N.T., 9/14/98, at 293, but given the breadth of her damages claim in the products liability action, they were clearly subsumed in that claim. As the release in the products liability action covered all injuries, known or unknown, anticipated or unanticipated, which had resulted from, or might result from the work-related accident, *see supra* n. 3, like the complaint, it was broad enough to encompass at least some of the injuries for which Appellant sought to recover in the medical malpractice action.

Accordingly, there was more than ample new, enhanced and clarified evidence pursuant to which Judge Field could apply the changed facts exception in *Goldey,* and conclude that the evidence now established that Appellees could state a cognizable release defense.[6] Judge Field was therefore free to overrule the first trial judge and grant Appellees' motion to amend their answers to assert the release defense. Importantly, Judge Field also considered Appellant's oral arguments regarding prejudice, *see Connor,* 461 A.2d at 602 (no right to amend if prejudice results to adverse party), and concluded that no prejudice would result given that Appellant's "counsel in the prior matter and the instant matter was the same

---

5. In her initial pretrial memo in the instant case, Appellant alleged that "Defendants' negligence caused these symptoms [of Cushing's Syndrome] to become progressively worse.... In consequence, [Appellant] became obese, moon-faced with blotchy skin and striae, buffalo-humped and otherwise disfigured, with resulting humiliation and embarrassment causing her to become reclusive, depressed and anxious. Her endocrine system was thrown into disorder, causing ... aggravated injuries in work accident...." 4/16/90 Plaintiff's Pre-trial Conference Memorandum at 7–8.

6. As the majority acknowledges, Judge Field "was in a superior position to reevaluate the question of the products liability release and its relation to the medical malpractice case than was the pretrial judge who made the initial decision." Maj. Op. at 795.

attorney" and "[t]here could be no surprise." 9/30/99 Trial Ct. Op. at 5–6.[7]

Thus, without extending this Court's limited holding in *Riccio,* I reach the same result as the majority.

SAYLOR, Justice, concurring.

As the majority aptly explains, at issue in this case is the substantial tension between maintaining respect for prior rulings in the interest of sound and efficient judicial administration, and the essential ability to correct mistakes in furtherance of the interests of justice. Unlike my colleagues, however, I do not discern material differences arising from the distinct procedural postures in which Judges Gordon and Field made their rulings to deny and allow Appellees to amend their answer, respectively, since I believe that the relevant circumstances were sufficiently developed at the time Judge Gordon made his initial ruling. I would nonetheless affirm the Superior Court's order, because I find that Judge Gordon's order was sufficiently infirm, in and of itself, to warrant correction at any time during the course of the proceedings. My reasoning follows.

In her complaint in the present medical malpractice action, Appellant asserted that some of the defendant-physicians had been negligent in their examination and treatment of her beginning in 1978, thus exacerbating her glandular disorder. Further, Appellant made explicit reference to injuries that she

7. In no way should this opinion be read to suggest that a litigant is required to prove a defense in order to establish its right to amend the pleadings to add the defense. As our prior case law makes clear, the right to amend should be "liberally granted," *Schaffer,* 189 A.2d at 270, and absent prejudice to the adverse party, a court should only deny a motion to amend when the party seeking amendment "will be unable to state a claim on which relief could be granted." *Werner,* 681 A.2d at 1338. This standard is similar to that of a demurrer and does not require proof of the facts underlying the claim or defense asserted. However, where, as here, a trial judge apparently erred by holding a party seeking amendment to too high of a standard, and facts subsequently developed at trial make clear that the proposed claim or defense is viable, a succeeding trial judge may use those facts to support the reversal of the first judge, so long as the judge also properly concludes that no prejudice will result to the opposing party.

sustained in her 1982 work-related accident, contending that such injuries aggravated the symptoms of her pre-existing disease, and, conversely, that the presence of the disease made her injuries worse than they otherwise would have been. Hence, Appellant claimed that the doctors' alleged negligence was a proximate cause of her total loss of earning power as of the date of the accident.[1]  In each motion to amend filed before Judge Gordon, his successor, and ultimately Judge Field, Appellees alleged, and Appellant admitted, that Appellant had filed a product liability action against Baker's Aid, Inc. arising out of the 1982 accident, and that she had settled that suit in exchange for Baker's Aid's payment to her of $275,000.

While recognizing that Appellees and Baker's Aid are alleged to be not joint but successive tortfeasors, nevertheless, Pennsylvania law prescribes that a plaintiff is generally entitled to only a single satisfaction for her loss. *See Brown v. Pittsburgh,* 409 Pa. 357, 362–63, 186 A.2d 399, 402–03 (1962); *Hilbert v. Roth,* 395 Pa. 270, 272, 149 A.2d 648, 650 (1959). The release, on its face, discharged all persons from any "consequences flowing" from the work-related accident, which presumably included the loss of earning power that Appellant claimed to have suffered as of that date.  Accordingly, to the extent that they might be deemed liable for the economic injuries alleged in the present complaint, the physician-defendants who treated Appellant prior to 1982 would also appear to be entitled to an offset for that portion of the $275,000 recovery attributable to Appellant's loss of earning capacity.

Additionally, those who treated her after 1982 could also have argued that the release constituted a bar to liability as, under Appellant's theory of the case, the maladies from which she was suffering at that point resulted, at least to some degree, from the 1982 accident.  It was thus apparent from

---

1.  The more common situation presented in the cases involves an injured person who commences actions against both a tortfeasor and a physician who rendered subsequent treatment.  *See, e.g., Thompson v. Fox,* 326 Pa. 209, 210-11, 192 A. 107, 107–08 (1937).  Here, by contrast, at least a portion of the medical malpractice is alleged to have occurred first.

the face of the release and the pleadings already of record, at the time of Appellees' first motion to amend, that the release constituted a possible bar to liability, and hence, that Appellees should have been permitted to amend their answer absent some valid reason for denying the amendment unrelated to the materiality of the release.

It should be acknowledged that there was one such potential reason before Judge Gordon at the time at which he initially denied the amendment-Appellant asserted that, given that Appellees' effort to amend occurred on the eve of the date set for trial, the amendment would be prejudicial. Appellees, however, claimed to have only recently learned of the settlement, and, unfortunately, Judge Gordon did not provide the rationale supporting his order. Moreover, Judge Gordon postponed the trial to consider the motion, and issued his order denying the motion more than one year later. In my view, it was error for Judge Gordon to issue an unexplained, *per curiam* order denying Appellees' petition for leave to amend their answer to assert the release in these circumstances, particularly where the basis for the amendment was always known to Appellant, and disallowance of the amendment opened the possibility for double satisfaction of Appellant's claim for economic damages.

The majority relies on a change in the procedural posture of the case as negating the application of the coordinate jurisdiction precept. *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422 (Pa.1997), is distinguishable, however, as that case concerns correction of mistakes at the post-trial motions stage of a civil action. *See id.* at 262, 705 A.2d at 425–26 (reasoning that "because the post-trial motion process is distinct procedurally from that of rendering a verdict following a non-jury trial and because the considerations of the judge are different at each procedural stage (rendering a verdict at the conclusion of trial versus correcting mistakes made during the earlier trial process), we hold that the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process"). Further, while it cannot be

disputed that the trial evidence advanced the understanding that Appellant sought overlapping damages in the medical malpractice and product liability actions (and therefore should be limited to a single satisfaction), as noted, this was already a matter of record in the case. While I recognize the concern that the manifest injustice exception to the coordinate jurisdiction rule should be applied cautiously and sparingly, liberal resort to a changed circumstances exception based upon modest developments in the record would implicate precisely the same sorts of concerns in terms of weakening the coordinate jurisdiction precept.

Here, the interests of justice and the coordinate jurisdiction rule would best be served by resting the Court's present disposition on the injustice connected with the denial of the amendment. Such denial was sufficiently erroneous to permit correction upon renewal of the motion.