**COMMONWEALTH of Pennsylvania**

v.

**George Michael VIGLIONE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 2003.
Filed Jan. 29, 2004.

Scott B. Rudolf, Pittsburgh, for appellant.

Robert A. Willig, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, TODD, and KLEIN, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 We granted *en banc* review to determine whether the law of the case doctrine precludes our consideration of appellant's double jeopardy claim. Having concluded that an exception to that doctrine allows our review, we nonetheless find no merit to the claim. We therefore affirm appellant's judgment of sentence for driving with license suspended. In order to reach that result, however, we must address and surmount several procedural roadblocks along the way.

¶ 2 A summary of the facts and procedure follows. The complainant, Eric Dorsch, who operates a wrecker as part of his job as a provider of emergency road service, spotted appellant riding his motorcycle in the emergency lane of an interstate highway and traveling at a high rate of speed. Dorsch, who was patrolling the interstate at the time, therefore radioed ahead to Trooper Jolando Hinton, who was finishing his investigation of an accident farther up the interstate, to watch out for the motorcycle. As a result, Trooper Hinton stopped appellant. Dorsch arrived at the scene while Trooper Hinton was talking with appellant and stopped to obtain some information. Following this incident, appellant returned to the interstate on two different dates and threatened Dorsch. The first incident allegedly involved verbal threats while both individuals were operating their vehicles. The second incident, however, involved appellant's allegedly stopping Dorsch and threatening to shoot him while pointing a gun at him. (Notes of testimony, 3/31/00 at 10–18.)

¶ 3 Appellant was subsequently arrested and charged with numerous counts, includ-

ing disorderly conduct and driving with license suspended.[1] The case proceeded to a non-jury trial before the Honorable Lester G. Nauhaus ("The Court"). At the close of the Commonwealth's case in chief, the following exchange, which is the core of appellant's double jeopardy claim, occurred:

> Patrick Thomassey Esq. (defense counsel): Just for the record I make a motion for judgment of acquittal on all counts, Your Honor.
>
> [THE COURT]: Come forward, Mr. Spurgeon (Assistant District Attorney David Spurgeon, Esq. ('Commonwealth counsel')). All right. Driving while under suspension, the record is not enough. That motion is granted.
>
> You have to force me—I will get you the case—but the Supreme Court has said that report without anything more is not enough to convict anybody of driving while under suspension. Has to be some, some indication that the defendant knew he was under suspension. There just hasn't been any testimony so far as that's concerned.
>
> Recklessly endangering another person charge the statute—
>
> [COMMONWEALTH COUNSEL]: Your Honor—
>
> [THE COURT]: I am talking.
>
> Yes, sir.
>
> [COMMONWEALTH COUNSEL]: As in terms of the driving while suspended I believe the defendant made statements to Officer Hinton that he knew his license was suspended. I believe Officer Hinton testified as to that.
>
> [THE COURT]: Okay. You are right. I withdraw that.

*Id.* at 35–36.

¶ 4 At the close of the evidence, the trial court found appellant guilty of summary disorderly conduct and driving while under suspension. Appellant waived a pre-sentence investigation and was immediately sentenced to pay a fine of $300 for summary disorderly conduct and $200 for driving while operating privileges were suspended. (*Id.* at 66.)

¶ 5 Appellant filed an immediate appeal on April 24, 2000, docketed at No. 785 WDA 2000. The trial court ordered appellant to file a Rule 1925(b) statement and appellant complied, raising issues of insufficiency of the evidence as to both convictions. Appellant also claimed the court erred when it failed to inform him of his right to allocution prior to sentencing and counsel was ineffective for failing to call the omission to the court's attention. (Concise Statement of Matters to be Raised on Appeal, 8/1/00, R. at 14.) In his Rule 1925(a) opinion, Judge Nauhaus found sufficient evidence to support the disorderly conduct conviction but, upon review of the transcript, insufficient evidence to support the driving with a suspended license conviction. (Trial court opinion, 8/28/00 at 3–4, R. at 15.)

¶ 6 In his brief to this court, appellant raised an issue he did not raise in his Rule 1925(b) statement:

> Were appellant's U.S. Const. [A]mend. V & XIV and Pa. Const. [A]rt. I § 10 rights violated when the trial court reversed its earlier order granting him a judgment of acquittal (and, to the extent an appellate challenge to this action was procedurally defaulted, was appellant denied his U.S. Const. [A]mend. VI & XIV and Pa. Const. [A]rt. I § 9 rights to the effective assistance of trial and appellate counsel by those defaults)?

*Commonwealth v. Michael Viglione,* No. 785 WDA 2000, unpublished memorandum

---

1. 18 Pa.C.S.A. § 5503(a), and 75 Pa.C.S.A. § 1543(a).

at 3, 778 A.2d 1249 (Pa.Super. filed May 11, 2001), R. at 16 ("*Viglione I* ").

¶ 7 The *Viglione I* court found insufficient evidence to support the disorderly conduct conviction but sufficient evidence to support the driving while operating privileges were suspended conviction and therefore remanded for re-sentencing. Regarding appellant's double jeopardy claim, the *Viglione I* panel, in a footnote, stated:

> Appellant's final complaint is that his constitutional rights were violated (a) when the trial court, ***after having granted a judgment of acquittal on the charge of summary disorderly conduct in his favor***, reconsidered and then reversed that judgment; and/or (b) when his trial and prior appellate counsel ineffectively failed to preserve this issue for appellate review. Appellant's Brief at 26. In light of our reversal of Appellant's judgment of sentence on his summary disorderly conduct conviction, we need not address this issue.

*Viglione I* at 10 n. 4 (emphasis added). Appellant filed a petition for reconsideration, which this court denied, and also filed a petition for allocatur, which our supreme court denied.

¶ 8 The case was remanded for re-sentencing on the only remaining conviction, driving with operating privileges suspended. Prior to the hearing on re-sentencing, Scott Rudolf, Esq., who is appellant's present counsel and who filed the brief in support of appellant's first appeal, in which he raised the double jeopardy claim, filed a motion pursuant to Pa.R.Crim.P. 704(B), 42 Pa.C.S.A. for pre-sentence relief.

Counsel acknowledges the impropriety of the written motion, but notes the Commonwealth consented to the court's hearing the motion, and the court addressed the motion prior to sentencing. (Notes of testimony, 4/16/02 at 3–6.)

¶ 9 In the motion, counsel requested that the court vacate appellant's conviction because it violated the double jeopardy clauses of both the United States and Pennsylvania Constitutions. Counsel for appellant further claimed that to the extent the court concluded appellant waived this claim by not raising the issue during trial or in his Rule 1925(b) statement, both trial and prior appellate counsel were ineffective and therefore violated his constitutional rights to the effective assistance of counsel. (Defendant's Pa.R.Crim.P. 704(B) Motion for Pre–Sentence Relief, 3/13/02, R. at 17.) [2]

¶ 10 As noted *supra*, Judge Nauhaus denied the motion and re-sentenced appellant to pay a fine of $200 within 30 days on the conviction for driving with suspended license in violation of 75 Pa.C.S.A. § 1543(a). (Notes of testimony, 4/16/02 at 8.) On April 17, 2002, counsel filed a motion for stay of sentence pending appeal; however, the docket entries do not indicate that the court ruled on the motion. (R. at 19.) Appellant subsequently filed a notice of appeal on May 14, 2002 and a Rule 1925(b) statement the same day. (R. at 20, 21.)

¶ 11 In his Rule 1925(a) opinion addressing the double jeopardy and ineffectiveness issues appellant raised in his second appeal, Judge Nauhaus opined that he *could not address the double jeopardy*

**2.** Suzanne M. Swan, Esq., of the Allegheny County Public Defender's Office, filed the Rule 1925(b) statement setting forth the issues appellant planned to raise in his first appeal. Attorney Rudolf, also of the Allegheny County Public Defender's Office, filed the brief on behalf of appellant in that first appeal, and notes in the substituted brief in support of the second appeal his own ineffectiveness in failing to raise the issue of Attorney Swan's ineffectiveness in the first appellate brief. (Appellant's substituted brief at iii.)

claim because appellant raised the issue in his first appeal and it was "considered by [this court.]" (Trial court opinion, 7/12/02 at 3.) The trial court also found the issue moot because appellant had already paid the fine. (*Id.* at 3–4, citing *Commonwealth v. Hollingsworth*, 524 Pa. 172, 179, 569 A.2d 947, 950 (1990) (McDermott, J., dissenting); *Commonwealth v. Quinn*, 215 Pa.Super. 78, 257 A.2d 266, 267 (1969).)

¶ 12 Appellant raises the following issues on appeal:

1. Were Appellant Viglione's Pa. Const. art. I §§ 9–10 and U.S. Const. amend. VI & XIV double jeopardy and due process rights violated when the trial court convicted him of driving-under-suspension (75 Pa.C.S. § 1543(a)) after it had granted him a judgment of acquittal on that same charge?

2. Were Appellant Viglione's Pa. Const. art. I § 9 and U.S. Const. amend. VI & XIV rights violated when prior appellate counsel ineffectively omitted from her Pa.R.App.P. 1925 concise statement (filed in the preceding appeal, 785 WDA 2000) the claims that (a) the trial court improperly convicted appellant of driving-under-suspension after it acquitted him of that charge, and (b) trial counsel ineffectively fai[le]d to object to the rescission of the judgment of acquittal entered on the driving-under-suspension charge?

3. Were Appellant Viglione's Pa. Const. art. I § 9 and U.S. Const. amend. VI & XIV rights violated when current appellate counsel ineffectively failed to assert, in the preceding appeal (785 WDA 2000) and in subsequent pleadings, the claim that prior appellate counsel ineffectively failed to list in her concise statement for that preceding appeal

the claim that trial counsel ineffectively failed to correct the prosecutor's material misstatement regarding the Commonwealth's evidence?

4. Does this court have the power to decide this appeal, notwithstanding the fact that Appellant Viglione has already paid the fine imposed on him, given precedent declaring that guilt-without-punishment is an appealable sentence, the fact that Appellant Viglione faced immediate confinement if his fine went unpaid, and the fact that the fine and costs paid by him can easily be refunded should he prevail on appeal?

Appellant's substituted brief at 6.

¶ 13 In an unpublished memorandum, a three-judge panel of this court, with two judges concurring in the result, concluded it was precluded from reaching the merits of appellant's double jeopardy argument based upon the law of the case doctrine, discussed more fully *infra*. *Commonwealth v. Michael Viglione*, No. 865 WDA 2002, unpublished memorandum at 4–10 (Pa.Super. filed April 4, 2003) (plurality memorandum with two judges concurring in the result) ("*Viglione II* ").

## INEFFECTIVENESS OF COUNSEL

¶ 14 As already noted, appellant claims his counsels' ineffectiveness based on trial counsel's failure to object to the trial court's orally granting and then withdrawing its grant of the judgment of acquittal; first appellate counsel's failure to raise either the double jeopardy issue or trial counsel's ineffectiveness for failing to object in the Rule 1925(b) statement filed with regard to the first appeal; and second appellate counsel's failure to raise trial and first appellate counsels' ineffectiveness for failing to preserve the double jeopardy

issue. (Appellant's substituted brief at 6, issues 2 and 3.)[3]

■ ¶ 15 "Recently, in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), our supreme court directed that ineffectiveness claims should await collateral review rather than be addressed on direct appeal." *Commonwealth v. Wright,* 832 A.2d 1104, 1109 (Pa.Super.2003). To be eligible for relief under the PCRA, however, a petitioner must be currently serving a sentence of imprisonment, probation, or parole. 42 Pa.C.S.A. § 9543(a)(1)(i). We therefore find the general rule *Grant* established inapplicable to this case because appellant appeals from his summary conviction for driving with operating privileges suspended, for which he was only sentenced to pay a fine. As a result, he is not eligible for relief under the PCRA. *Commonwealth v. Salisbury,* 823 A.2d 914, 916 (Pa.Super.2003).

¶ 16 Additionally, this is not a case in which we lack a record or must go outside the record to resolve appellant's ineffectiveness claim, a major concern the *Grant* court expressed when an appellate court is asked to address ineffectiveness claims in a direct appeal. *See Grant, supra* at 59–67, 813 A.2d at 733–737. In fact, if we find merit to appellant's claim that the trial court violated appellant's constitutional right not to be placed in jeopardy twice for the same crime, we must necessarily find counsel ineffective for failing to object and for failing to raise the issue of trial counsel's ineffectiveness in the first Rule 1925(b) statement: it is beyond peradventure that counsel could not have had a reasonable, strategic basis designed to effect appellant's interests, or that appellant could be found not to have been prejudiced by the omission.

## MOOTNESS

■ ¶ 17 We must next address the trial court's contention that the issues appellant raises on appeal are moot because he has already paid his fine. (Trial court opinion, 7/12/02 at 3–4, citing *Hollingsworth, supra,* (McDermott, J., dissenting); and *Quinn, supra.*) Unlike the trial court, we are not inclined to rely on former Justice McDermott's two-sentence dissenting opinion in a case in which the majority did not address the issue of mootness based upon Hollingsworth's having paid the fines that constituted her sentence. *Hollingsworth, supra* at 177 n. 2, 179, 569 A.2d at 949 n. 2, 950.

¶ 18 We also find *Quinn* inapposite because in that case, Quinn, who was underage, voluntarily paid a fine after pleading guilty to unlawfully consuming alcohol. *Quinn,* 257 A.2d at 267. As the *Quinn* court opined, "That the appellant paid the fine and costs *voluntarily* is not open to dispute." *Id.* (emphasis added). Thus, under the rules existing at the time, "voluntary payment of the fine and costs imposed in a summary proceeding ended the case and the defendant could not ... have

---

**3.** Appellant also claims trial counsel's ineffectiveness for failing to correct the prosecutor's material misstatement with regard to the Commonwealth's evidence and prior appellate counsel's ineffectiveness in failing to raise the issue in her Rule 1925(b) statement. (Appellant's substituted brief at 6 issue 3.) Because the *Viglione I* panel, after carefully reviewing the entire transcript specifically including Officer Hinton's testimony, found sufficient evidence to support the driving with license suspended conviction, we find no prejudice to appellant arising from trial counsel's failure to object to any misstatement of the officer's testimony or failure to preserve this issue. *Viglione I,* No. 785 WDA 2000, unpublished memorandum at 8–10, 778 A.2d 1249. *See Commonwealth v. Hudson,* 820 A.2d 720, 726 (Pa.Super.2003) (observing, "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim[ ]") (citations omitted).

the proceeding reviewed on *certiorari* [,]" as he wished. *Id.*

¶ 19 We find this case more closely akin to *Commonwealth v. Corkins*, 230 Pa.Super. 68, 326 A.2d 635 (1974), a case in which Corkins paid his fine and costs after having been found guilty of violations of the Motor Vehicle Code, but indicated his intention to seek review by way of *certiorari* so that the court held his fine and costs in escrow pending the result of *certiorari*. *Id.* at 635–636. As a result, the *Corkins* court found that Corkins had "made no final and voluntary payment of fine and costs such as to waive his right to appeal." *Id.* at 636.

¶ 20 Similarly, in this case, appellant filed a motion for stay of sentence pending appeal, which the trial court apparently did not decide. (R. at 19.) In that motion, appellant indicated his intention to appeal by the May 16, 2002 deadline, which was also appellant's deadline for paying the $200 fine plus costs. (*Id.*) Additionally, the re-sentencing hearing transcript indicates Judge Nauhaus instructed defense counsel to advise appellant of the consequences of failing to pay the fine within 30 days, as ordered. (Notes of testimony, 4/16/02 at 8.) The Sentencing Code provides that the penalty for failing to pay court-ordered obligations consists of a period of confinement, the length of which is determined by the sentence that could have been imposed, but which may not exceed six months. 42 Pa.C.S.A. § 9772. We therefore conclude that appellant in this case did not voluntarily pay his fine. As a result, we find his appeal is not moot.

## LAW OF THE CASE

¶ 21 Having determined that this appeal is properly before us, we must next decide whether the law of the case doctrine precludes our review of appellant's double jeopardy claims. The Common-wealth argues that it does for one of two reasons: either because the panel of this court in *Viglione I* found the double jeopardy issue moot and therefore did not address it, or because this court denied appellant's petition for reargument in which he raised the panel's error in refusing to address his double jeopardy claim.

¶ 22 Appellant argues the *Viglione I* panel's decision does not invoke the law of the case because it did not address the double jeopardy issue on the merits. Additionally, appellant asserts that denial of a petition for reconsideration does not constitute a disposition on the merits and therefore does not preclude review. Based upon the *Viglione I* panel's determination of mootness, we find relevant that part of the law of the case doctrine that prevents an appellate court, upon a second appeal, from altering the resolution of a legal question previously decided by the same appellate court. We need not, therefore, decide whether this court's denial of a petition for reargument constitutes the law of the case so as to preclude further consideration of issues raised therein.

¶ 23 In 1995, our supreme court assumed the coordinate jurisdiction rule and all its attendant meanings and limitations, which that court had expressed in its prior case law, into the law of the case doctrine "in an effort to standardize and streamline the law to which our courts must refer when considering prior rulings of courts of coordinate jurisdiction and of courts of appellate jurisdiction in the same litigated matter." *Commonwealth v. Starr*, 541 Pa. 564, 578, 664 A.2d 1326, 1333 (1995).

Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question

previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Id.* at 574, 664 A.2d at 1331, citing Joan Steinman, Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation, 135 U.Pa.L.Rev. 595, 602 (1987) (hereinafter "Judicial Puzzle") (other citation omitted). *Accord Zane v. Friends Hospital,* 575 Pa. 236, 243–44, 836 A.2d 25, 29 (2003).

¶ 24 As the *Starr* court continued: The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy … but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Starr, supra* at 574, 664 A.2d at 1331, citing 21 C.J.S. Courts § 149a; Judicial Puzzle at 604–605.

¶ 25 The argument appellant raises in this case is that the *Viglione I* panel did not dispose of his double jeopardy claim on the merits; rather, it declined to address the substance of the issue based upon the erroneous belief that the issue went to appellant's disorderly conduct conviction, not his Motor Vehicle Code violation. In support of his argument, appellant directs our attention to *Commonwealth v. Fisher,* 559 Pa. 558, 741 A.2d 1234 (1999) ("*Fisher III* "), *cert. denied.* 531 U.S. 829, 121

S.Ct. 81, 148 L.Ed.2d 43 (2000), and *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996) ("*Fisher II* ").

¶ 26 We will not recount the entire procedural history of *Fisher.* For our purposes, it suffices to say that the Commonwealth sought the death penalty in 1991 after Fisher was convicted of first degree murder. Fisher was sentenced to death and appealed. Our supreme court vacated the conviction and remanded for a new trial. *Commonwealth v. Fisher,* 527 Pa. 345, 591 A.2d 710 (1991) ("*Fisher I* "). Fisher was again convicted and sentenced to death, after which our supreme court remanded for a new penalty hearing in 1996. *Fisher II, supra.* Fisher was again sentenced to death and appealed. *Fisher III, supra.*

¶ 27 The Commonwealth in *Fisher III* claimed the law of the case precluded the supreme court from reconsidering whether the sentencing court erred when it permitted the Commonwealth to proceed under an aggravating circumstance set forth at 42 Pa.C.S.A. § 9711(d)(15), which was promulgated after the killing of which Fisher was convicted but before his trial, because the trial court resolved that issue during the 1991 trial. *Fisher III, supra.* at 572 n. 11, 741 A.2d at 1241 n. 11. The *Fisher III* court rejected the Commonwealth's contention, first observing that an appellate court is not bound by a lower court's decision, citing *Starr, supra. Id.* Additionally, the *Fisher III* court observed, "[C]ontrary to the Commonwealth's suggestion, we did not resolve this issue in *Fisher II;* we clearly stated therein that we did not reach this issue." *Id.,* citing *Fisher II, supra* at 263 n. 6, 681 A.2d at 144 n. 6. Note 6 of *Fisher II* sets forth four penalty phase issues "we do not reach," including the issue the Commonwealth sought to preclude in *Fisher III. Fisher II, supra* at 263 n. 6, 681 A.2d at 144 n. 6.

¶ 28 More recently, in *Commonwealth v. Cuevas*, 574 Pa. 409, 832 A.2d 388 (2003), our supreme court vacated Cuevas' death sentence and remanded for a new penalty hearing, finding error in allowing the jury to consider an aggravating circumstance where the Commonwealth failed to prove an essential element thereof. As a result, the *Cuevas* court declined to address the remaining claims of error relating to Cuevas' penalty hearing, concluding that because it vacated Cuevas' death sentence and remanded for a new penalty hearing, Cuevas' remaining penalty hearing issues were rendered moot and need not be addressed. *Id.* at 422 n. 3, 832 A.2d at 396 n. 3.

¶ 29 Implicit in both *Fisher II* and *Cuevas* is the presumption that the defendants could, in a future appeal, raise any claims of error regarding their new penalty hearings, including claims they had raised in the past that the supreme court had not decided, providing those claims remained viable in the context of the new penalty hearings. The supreme court's refusal to address issues unnecessary to its disposition of the two cases was, therefore, merely a recognition that addressing the issues would be dicta at that point and might not arise again at the new penalty hearings.

¶ 30 In this case, in contrast, the *Viglione I* panel arrived at its legal conclusion that it was not required to address appellant's double jeopardy claim based on its belief that the claim arose in relation to the disorderly conduct **conviction**, which the *Viglione I* court vacated. If the court were correct in its belief, neither the Commonwealth nor appellant would have had any basis upon which to raise the claim in the future, as no future proceedings vis-à-vis the vacated conviction would be possible.

¶ 31 We therefore find the procedural posture of this case more closely akin to

cases in which a prior panel finds an issue waived or finds an appeal to be interlocutory. *See, e.g., Block v. Bilinski*, 823 A.2d 970, 972–973 (Pa.Super.2003) (quashing as interlocutory an appeal from an order denying a petition to assess counsel fees as costs, concluding that based on the law of the case doctrine, the *Block* panel was bound by a prior determination of a panel of this court in the same case that an appeal from an order either awarding or denying attorney's fees is interlocutory). *Block* indicates the law of the case doctrine applies equally whether a prior court in the same case renders a pronouncement on procedural grounds or substantive grounds. As a result, we disagree with appellant that *Fisher III* should be read for the proposition that "the coordinate jurisdiction rule applies only when there has been a prior decision on the merits." (Appellant's substituted brief at 35.)

¶ 32 We recognize that the Commonwealth does not ground its law of the case argument on the *Viglione I* court's footnote, arguing instead that this court's denial of reargument necessarily constituted a decision on the merits. (Commonwealth's substituted brief at 8.) While the Commonwealth's argument has a surface appeal, we find that it fails to withstand scrutiny beneath that surface. This court's consideration of appellant's petition for reargument would not have reached the merits of the double jeopardy claim any more than the panel decision did. Instead, on reargument, the court's only task would have been to decide whether the panel erred when it refused to consider the double jeopardy argument. A denial of reargument was, therefore, nothing more than a refusal, for whatever reason, to revisit the *Viglione I* panel's decision not to reach the merits of the double jeopardy issue.[4]

4. In contrast, had the court granted panel reconsideration, the three-judge panel that

## MANIFEST INJUSTICE EXCEPTION

¶ 33 Having determined that the law of the case doctrine applies to the *Viglione I* panel's decision not to address appellant's double jeopardy issue, we must next decide whether an exception to the doctrine applies. We note first that "[r]eview of an order regarding an exception to the coordinate jurisdiction rule ... is a question of law. Thus, our standard of review is de novo." *Zane, supra* at 245 n. 8, 836 A.2d at 30 n. 8 (citation omitted). Additionally, "[o]ur scope of review is plenary as this court may review the entire record in making its decision." *Id.* (citations omitted).

¶ 34 As the *Starr* court observed, the limitations on the law of the case doctrine and the coordinate jurisdiction rule are virtually identical:

Departure from either of these principles is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed.

*Starr, supra* at 575–576, 664 A.2d at 1332.

¶ 35 Appellant clearly cannot, and does not, argue that either of the first two limitations applies. Appellant does argue, however, that the third exception applies because the *Viglione I* panel's decision was clearly erroneous and would create a manifest injustice if followed. (Appellant's substituted brief at 37–38.) The Common-

wealth agrees that the *Viglione I* panel's decision not to address the double jeopardy claim was clearly erroneous. (Commonwealth's substituted brief at 7.) The Commonwealth claims, however, that even if this court were to find the *Viglione I* panel's decision to be clearly erroneous, appellant cannot show a manifest injustice because his double jeopardy claim lacks merit. (*Id.* at 11.)

¶ 36 We find that the Commonwealth's argument misses the mark. The manifest injustice appellant claims is not that he was twice placed in jeopardy for the same crime. Rather, his claim is that this court erroneously refused to address the double jeopardy claim, thereby denying appellant his constitutional right to have this court review the merits of the double jeopardy issue in a direct appeal.[5] The question we must answer is, therefore, whether the clearly erroneous/manifest injustice exception to the law of the case doctrine applies to the facts of this case.

¶ 37 Our supreme court has recently recognized the continuing validity of the clearly erroneous/manifest injustice exception. *Zane, supra* at 243–45, 836 A.2d at 29–30 (upholding the clearly erroneous/manifest injustice exception to the law of the case doctrine in those circumscribed cases in which the prior court's ruling was so clearly erroneous that it would create a manifest injustice that would be, in essence, plainly intolerable, if followed). *See also Ryan v. Berman*, 572 Pa. 156, 813 A.2d 792 (2002); *Gerrow v. John Royle & Sons*, 572 Pa. 134, 813 A.2d 778 (2002)

decided *Viglione I* could have acknowledged the error, withdrawn its memorandum, and addressed the double jeopardy issue on the merits.

5. We recognize that this court in *Block, supra,* while explicitly holding that the law of the case applied to the question of appealability, it further speculated that even if the prior

panel's holding were clearly erroneous, no manifest injustice would occur in quashing the second appeal. *Block*, 823 A.2d at 973. By way of explanation, the panel merely opined in dicta that if the appeal were permitted, the trial court's determination would be affirmed. *Id.*

(plurality); *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581 (1999). The *Zane* court clearly instructs, however, that Pennsylvania courts must be scrupulous in applying the exception so that it does not swallow the rule.[6] First, the prior court's ruling must, in fact, be so palpably erroneous that reversal is almost certain on appeal. *Zane, supra* at 243–44, 836 A.2d at 29. Even then, the error must also create such an injustice as to be plainly intolerable. *Id.* at 30.

¶ 38 In *Zane, supra,* for example, our supreme court determined that the trial court's discovery order directing disclosure of psychiatric reports was clearly erroneous as it violated specific provisions of the Mental Health Procedures Act, 50 P.S. §§ 7101–7502. *Zane, supra* at 249–50, 836 A.2d at 33. Then, when addressing the manifest injustice prong, the court looked to the chilling effect disclosure of such confidential information would have on the purpose of mental health practices as set forth in 50 P.S. § 7102, as well as to the fact that the confidential nature of the information, once disclosed, would be forever lost. *Zane, supra* at 250–51, 836 A.2d at 34. Significantly, the *Zane* court did not look to the impact disclosure might have in the underlying litigation. In this case, as already noted, we likewise find such an injustice, as application of the law of the case doctrine would preclude this court from reviewing appellant's double jeopardy claim, a review to which he is constitutionally entitled. We turn, therefore, to the merits of that claim.

## DOUBLE JEOPARDY

■ ¶ 39 The federal Double Jeopardy Clause is found in the Fifth Amendment to the U.S. Constitution and applies to the States through the Fourteenth Amendment. *Price v. Vincent*, 538 U.S. 634, 636, 123 S.Ct. 1848, 1851, 155 L.Ed.2d 877 (2003).[7] "The Double Jeopardy Clause of the United States Constitution provides that no 'person [shall] be subject for the same offense to be twice in jeopardy of life or limb....'" *Commonwealth v. McGee*, 560 Pa. 324, 327, 744 A.2d 754, 756 (2000), quoting U.S. Const. Amend. V. As the *McGee* court noted, although McGee's arguments were premised exclusively upon the Double Jeopardy Clause of the United States Constitution, our supreme court "has recognized that the corresponding proscription contained in the Pennsylvania Constitution, Pa. Const. art. 1, § 10, 'involves the same meaning, purpose, and end[ ]'; thus, it has generally been construed as coextensive with its federal counterpart." *McGee, supra* at 327 n. 2, 744 A.2d at 756 n. 2, quoting *Commonwealth v. McCane*, 517 Pa. 489, 500 n. 5, 539 A.2d 340, 346 n. 5 (1988).

¶ 40 "'Whether the Double Jeopardy Clause has been violated is a matter of law, reviewed *de novo*'" by an appellate court. *United States v. Byrne*, 203 F.3d 671, 673 (9th Cir.2000), *cert. denied*, 531 U.S. 1114, 121 S.Ct. 861, 148 L.Ed.2d 774 (2001), quoting *United States v. McClain*, 133 F.3d 1191, 1193 (9th Cir.1998), *cert. denied*, 524 U.S. 960, 118 S.Ct. 2386, 141 L.Ed.2d 752 (1998) (other citation omitted).

¶ 41 According to appellant, his first jeopardy terminated when the trial court orally granted defense counsel's motion for judgment of acquittal on one of two counts,

**6.** We recognize that several of our supreme court justices have expressed concern about the continuing viability and advisability of the manifest injustice exception in *Ryan, supra* at 164 n. 1, 813 A.2d at 796 n. 1 (Nigro, J.,

concurring); and *Gerrow, supra* at 155, 813 A.2d at 791 (Nigro, J., dissenting).

**7.** Citations to pages of the U.S. Reports were not available at the time of writing.

driving while operating privilege is suspended or revoked, not DUI related, at the close of the Commonwealth's case in a non-jury trial.[8] Thus, according to appellant, when the trial court subsequently denied the motion for acquittal following the Commonwealth's description of the evidence supporting a conviction for driving with license suspended, as set forth *supra*, the trial court placed appellant twice in jeopardy for the same offense. In support of his argument, appellant relies primarily upon *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986); and *Commonwealth v. Stark*, 526 Pa. 1, 584 A.2d 289 (1990). Appellant also distinguishes the facts of this case from the facts of *Price, supra*, a case upon which the Commonwealth relies.

¶ 42 We agree with appellant that this case is distinguishable from *Price, supra*, both procedurally and substantively. Procedurally, *Price* involved an appeal from the grant of federal **habeas** relief, and therefore invoked a far more deferential standard of review than our standard in this case. Substantively, *Price* is also distinguishable because the trial court articulated a much less decisive ruling than the trial court did in this case. The trial court in *Price* stated:

> '[M]y impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder .... I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.'

*Price, supra* at 637, 123 S.Ct. at 1851, quoting *Vincent v. Jones*, 292 F.3d 506, 508 (6th Cir.2002), quoting notes of testimony (no citation given). Following the judge's statement, the prosecutor asked to

make a brief statement regarding first degree murder the following morning, and the trial court granted the request.

¶ 43 Defense counsel objected to the statement the next morning, however, claiming the court had already granted a motion for a directed verdict on the first degree murder charge the previous day; therefore, any further prosecution would violate the Double Jeopardy Clause. *Id.* The judge responded, " 'Oh, I granted a motion but I have not directed a verdict.' " *Id.*, quoting *Vincent*, 292 F.3d at 509, quoting notes of testimony. The trial court observed that the jury had not been informed of his statements and that he would reserve ruling on the matter. Ultimately the first degree murder charge went to the jury, which convicted Vincent of that charge.

¶ 44 Ultimately, the U.S. Supreme Court granted **certiorari** to review the Sixth Circuit Court of Appeals' affirmance of the district court's grant of **habeas corpus** relief. The Supreme Court reversed, distinguishing the trial court's statement in the case before it from the statements of clarity and finality, accompanied by formal orders from which appeals were taken, at issue in *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986); and *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). *Id.* at 640, 123 S.Ct. at 1853.

¶ 45 Thus, while we agree with appellant that *Price* is distinguishable, we also find *Smalis, supra*, and *Stark, supra*, to be both procedurally and factually distinguishable. *See Smalis*, 476 U.S. at 145–146, 106 S.Ct. 1745 (citing *Arizona v. Rumsey*, 467 U.S. 203, 211, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), and opining, "[W]hether the trial is to a jury or to the

8. 75 Pa.C.S.A. § 1543(a).

bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause[ ]"; quoting *Martin Linen*, 430 U.S. at 570, 97 S.Ct. 1349 and further observing that "the Double Jeopardy Clause bars *postacquittal appeal by the prosecution* not only when it might result in a second trial, but also if reversal would translate into " 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." ' ") (emphasis added) (other citation omitted). *See also Stark, supra* at 5–6, 584 A.2d at 291 (finding the trial court's verdict of not guilty to be a legal nullity where the court switched its verdict from guilty to not guilty based on the Commonwealth attorney's behavior; opining, "In changing appellant's verdict, the trial judge went beyond the authority which a trial judge may properly exercise over a verdict.").

¶ 46 Having found the preceding cases inapposite, we have reviewed cases from other jurisdictions, especially those the Supreme Court cited with approval in *Price, supra* at 643 n. 2, 123 S.Ct. at 1854 n. 2. These include *United States v. LoRusso*, 695 F.2d 45 (2nd Cir.1982), *cert. denied sub nom. Errante v. U.S.*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *Byrne, supra; United States v. Baggett*, 251 F.3d 1087 (6th Cir.2001), *cert. denied*, 534 U.S. 1167, 122 S.Ct. 1184, 152 L.Ed.2d 126 (2002); and *State v. Sperry*, 149 Or. App. 690, 945 P.2d 546 (1997), *review denied*, 328 Or. 275, 977 P.2d 1173 (1999). According to the Sixth Circuit Court of Appeals in *Baggett, supra*, "*Byrne* and *LoRusso* stand for the proposition that an oral grant of a [motion for judgment of acquittal] *outside the jury's presence* does not terminate jeopardy, inasmuch as the court is free to change its mind prior to the entry of judgment." *Baggett*, 251 F.3d at 1095 (emphasis added).

¶ 47 *Sperry, supra*, is particularly germane to the facts before us. In *Sperry*, the Court of Appeals of Oregon, addressing a case of first impression in that state, observed:

There is, indeed, substantial appeal to defendant's 'bright-line' position that, once a trial judge utters the 'magic words' of acquittal, further prosecution is precluded. Moreover, to the extent the state is urging that, as a constitutional matter, the oral allowance of a judgment of acquittal is never entitled to preclusive effect, that position is constitutionally unsupported and practically unworkable. *Nevertheless, we do agree with the state that an oral ruling allowing a motion for judgment of acquittal is not preclusive, and may be rescinded, where, as here, neither the parties nor the court have detrimentally relied on that ruling—e.g., through presentation of arguments, introduction of evidence, or instruction or discharging of the jury—in the interval between the oral allowance and rescission.*

*Sperry*, 945 P.2d at 551 (emphasis added).

¶ 48 In reaching its conclusion, the *Sperry* court found both "instructive and persuasive[ ]" *United States v. Baker*, 419 F.2d 83 (2d Cir.1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970). *Id.* Observing that the double jeopardy argument presented in *Baker* was almost identical to the argument urged in *Sperry*, the *Sperry* court observed, "The Second Circuit concluded that the trial court's reconsideration of its oral granting of a motion for a judgment of acquittal and subsequent reinstatement of a charge did not violate the Fifth Amendment's double jeopardy bar[.]" *Id.* The *Sperry* court then quoted *Baker*, in which

468

the Second Circuit Court of Appeals opined:

'In the case before us, no final judgment of acquittal was ever entered, and certainly Baker was not subjected to the harassment of successive prosecutions. Nor did the prosecution seek a delay in order to obtain a more favorable opportunity to convict. The only prejudice Baker suffered is psychological; his hopes were first raised, then quickly lowered. But so ephemeral and insubstantial an injury is not proscribed by the Constitution.'

Sperry, 945 P.2d at 551, quoting Baker, 419 F.2d at 89.

¶ 49 Continuing, the Sperry court observed, "Here, as in Baker, it is arguable that defendant may have suffered some incremental psychic distress from believing overnight that one of the charges against him had been dismissed and learning the next morning that it had not." Id. As the Oregon Court of Appeals continued, "Conversely, none of the other concerns that underlie double jeopardy protections was implicated. Defendant was 'not subjected to the harassment of successive prosecutions.'" Id., quoting Baker, 419 F.2d at 89. Additionally, as the Sperry court observed, "Nor did the state gain any tactical advantage or defendant incur any tactical detriment." Id., citing State v. Bannister, 118 Or.App. 252, 257, 846 P.2d 1189 (1993) (opining, "The purpose of the former jeopardy rule is to protect defendants from harassment by the state and to prevent the state from seeking to hone its case against a defendant through repeated prosecutions.").

¶ 50 Finally, the Sperry court reasoned, "Here, as in Baker, nothing substantive occurred between the court's oral pronouncement of the order and its oral reversal of the order. Nor does defendant suggest that the state engaged in prosecu-

torial misconduct or that the court's actions in any way affected the jury's fact-finding process." Id. at 552.

¶ 51 Applying the rationale behind the constitutional protections the Double Jeopardy Clause is intended to afford, and considering the manner in which other courts have analyzed that rationale when addressing similar factual scenarios, we conclude that in this case, the trial court did not violate the Double Jeopardy Clauses of either the United States or Pennsylvania Constitutions. A matter of moments passed between the court's grant and denial of the motion for judgment of acquittal; the Commonwealth did not re-open its case to present more evidence; appellant was not subjected to harassment or uncertainty; the Commonwealth did not gain and appellant did not lose any tactical advantage; and, at worst, appellant had his hopes raised, and just as quickly lowered, by the trial court's actions. We agree with the Sperry court that "'so ephemeral and insubstantial an injury is not proscribed by the Constitution.'" Id., quoting Baker, 419 F.2d at 89.

¶ 52 Having found no merit to appellant's double jeopardy claim, we must necessarily find no merit to his ineffectiveness of counsel claims as well. As a result, we affirm appellant's judgment of sentence.

¶ 53 Judgment of sentence affirmed.