COMMONWEALTH of Pennsylvania

v.

**Keith Lamont DRAIN, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 5, 2007.
Filed March 16, 2007.

**3.** Our disposition makes it unnecessary to reach Morgan's second and third issues presented on appeal.

David R. Crowley, Bellefonte, for appellant.

Nathan L. Boob, Assistant District Attorney, Bellefonte, for Com., appellee.

Before BENDER, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Keith Lamont Drain, Jr., appeals from the July 17, 2006, Order denying his omnibus pre-trial motion to dismiss.

1.  18 Pa.C.S.A. §§ 2702(a)(2), (3).

2.  *Id.,* § 2703(a).

3.  *Id.,* § 2701(a)(1).

¶ 2 Appellant is currently serving a 15 to 30–year prison term, which was imposed after he was convicted of robbery in a proceeding unrelated to this appeal. Trial Court Opinion, Brown, P.J., 7/17/06, at 2. On the evening of January 25, 2005, while serving his sentence at the Rockview Correctional Institute, appellant assaulted a corrections officer with a wooden handle. Record, No. 1, Affidavit of Probable Cause. Appellant landed numerous blows with the handle before officers were able to restrain him. *Id.* As a result of the incident, the corrections officer sustained four fractures to his cheek bone, nerve damage in his elbow, and numerous abrasions. *Id.*

¶ 3 Appellant was charged with two counts of aggravated assault,[1] one count of assault by a prisoner,[2] and one count of simple assault[3] in connection with the attack. While these charges were pending adjudication in the trial court, the Pennsylvania Department of Corrections instituted internal disciplinary proceedings in relation to the assault. Trial Court Opinion at 2. As a result of these proceedings, appellant was ordered into solitary confinement for a period of "not less than 360 days." *Id.* Appellant was initially placed in the restricted house unit at Rockview and, shortly thereafter, was transferred to the Long–Term Segregation Unit (LTSU) at the Fayette State Correctional Institute. *Id.*

¶ 4 Before the matter could proceed to trial, appellant filed an omnibus pre-trial motion contending that the criminal charges should be dismissed on double jeopardy[4] grounds due to the fact he had

4.  U.S. Const. amend. V.; *see also,* Pa. Const. art. 1, § 10. Our Supreme Court has noted that the Double Jeopardy Clause contained in the federal Constitution and the Double Jeop-

already been disciplined internally by the Pennsylvania Department of Corrections. Record, No. 22. The trial court held a hearing on the matter and then issued the Order that is subject of this appeal.

¶ 5 Appellant raises the following issue for our review:

> I. Did the lower court err in concluding that the state's punishment of an inmate for assaulting a corrections officer by confining him for 360 days at the long term segregation unit did not bar a subsequent criminal prosecution for the same conduct under the Double Jeopardy Clause of the United States Constitution?

Appellant's brief at 4.

¶ 6 The determination as to whether the Double Jeopardy Clause has been violated is one of pure law and, as such, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Viglione*, 842 A.2d 454, 465 (Pa.Super.2004).

¶ 7 In *Commonwealth v. McGee*, 560 Pa. 324, 744 A.2d 754 (2000), our Su-

preme Court adopted the test fashioned by the United States Supreme Court in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), for determining whether a sanction imposed on an inmate by the Pennsylvania Department of Corrections implicates the Double Jeopardy Clause. The *Hudson* test requires an analysis of two factors. First, it must be determined whether the legislature intended the particular sanction imposed to be civil or criminal in character. *McGee, supra* at 756, *citing Hudson, supra* at 99, 118 S.Ct. 488. Second, the character and degree of the punitive aspects of the sanction must also be considered. *Id.* at 757.[5]

¶ 8 In applying the *Hudson* test in dismissing a prisoner's contention that a 60–day assignment to solitary confinement foreclosed further criminal sanction under the Double Jeopardy Clause, the *McGee* Court stated:

> Thus, we hold that, where, as here, disciplinary action is imposed for infractions of prison regulations within the confines of authorized administrative scheme, *and* such discipline falls within

ardy Clause contained in this Commonwealth's Constitution involve the "same purpose, meaning, and, end" and, therefore, these provisions are coextensive. *Commonwealth v. McGee*, 560 Pa. 324, 744 A.2d 754, 756 n. 2 (2000) (citation omitted). As such, the term "Double Jeopardy Clause" can be fairly construed as referring to both the federal and state provisions.

5. In adopting the test set forth in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), our Supreme Court noted that the *Hudson* Court also pointed to a number of factors outlined in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), to determine whether a particular sanction is criminal or civil in nature. *McGee, supra* at 757 n. 3 (pointing to factors including: 1. whether the sanction involves an affirmative disability or restraint; 2. whether it has historically been regarded as a punishment; 3. whether it comes into play

only on a finding of *scienter;* 4. whether its operation will promote the traditional aims of punishment-retribution and deterrence; 5. whether the behavior to which it applies is already a crime; 6. whether an alternative purpose to which it may rationally be connected is assignable for it; and 7. whether it appears excessive in relation to the alternative purpose assigned.).

Inasmuch as *Kennedy* did not pertain to the prisoner discipline context, however, our Supreme Court declined to adopt the *Kennedy* factors to analyze whether prisoner sanctions could properly be considered criminal. *McGee, supra* at 759 ("Further, we find it unnecessary to frame our evaluation *in the prison setting* according to the 'guidepost' factors identified in *Hudson.*") (Emphasis added.) We believe our Supreme Court's mandate is clear in this regard and, hence, we will not consider the *Kennedy* factors.

the range of predictable punishment under the original sentence *and* can be justified on the basis of safe, orderly or efficient institutional administration, it does not implicate the constitutional proscription against subsequent criminal prosecution based upon double jeopardy. *McGee, supra* at 759 (emphasis added).

¶ 9 This holding speaks primarily to the second prong of the *Hudson* analysis, as any argument that our General Assembly intended prison discipline to be criminal in character is without merit.[6] The Court, in forwarding this holding, stated that unless a prison sanction is "grossly disproportionate" to either the offense or the remedial purposes of the prison disciplinary system the sanction will be upheld. *McGee, supra* at 759 n. 7, *citing United States v. Hernandez–Fundora,* 58 F.3d 802, 807 (2d Cir. 1995).

■ ¶ 10 Consequently, our precedent requires us to analyze the character and degree of the punitive aspect of appellant's term of solitary confinement. In doing so, we must determine whether this sanction is authorized by the administrative scheme, is a predictable consequence of the original sentence, and is justified to ensure prison safety or, conversely, whether the appellant's sanction is grossly disproportionate. In applying this framework, we are mindful of the high level of deference our Supreme Court affords the Department of Corrections. *McGee, su-*

*pra* at 759 ("As to the second *Hudson* criterion, we afford deference to the Department's articulation and implementation of the purposes for prison discipline, and, while acknowledging the punitive aspects, conclude that the essential civil/remedial emphasis upon safe, orderly, and efficient management, predominates.") (citation omitted).

¶ 11 Appellant does not, and seemingly cannot, challenge the fact that lengthy periods of solitary confinement are authorized by the administrative scheme that governs the Department of Corrections. *See generally,* Record, No. 30, Joint Exhibit 1, LTSU Procedures. Similarly, appellant does not allege that his solitary confinement was an unpredictable result of his sentence.[7]

¶ 12 The resolution of this matter, therefore, requires us to determine whether appellant's solitary confinement term was justified on the basis of prison safety or, conversely, whether it was grossly disproportionate to his offense. After careful review, we conclude appellant's punishment was, indeed, justified.

¶ 13 Appellant argues his term is grossly disproportionate because his assault on the corrections officer was aimed at a specific target and, thus, did not represent a threat to the prison population as a whole. While appellant acknowledges that solitary confinement increases safety, he further contends this is "only true up to a certain

6. The *McGee* Court foreclosed the validity of such an argument. *McGee, supra* at 758–759, *citing* Pennsylvania Department of Corrections, Policy Statement, Administrative Directive 801 (May 20, 1994) ("[I]t is clear from the structure and function of the administrative scheme for prison discipline that the Pennsylvania General Assembly intended it to be civil and administrative in nature. The legislative delegation of authority to administer, manage and supervise prison facilities to the Department of Corrections ... constitutes

*prima facie* evidence of such intent.") (internal citation omitted).

Appellant does not assert that our General Assembly intended for prisoner discipline to be anything but civil in nature.

7. *See generally, Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").

point." Appellant's brief at 16. In support of this contention, appellant points to scholarly research indicating that prolonged solitary confinement can lead to violent delusions and suicidal tendencies. *Id.* at 14. Finally, appellant maintains his case is exceptional due to the length of the term of solitary confinement imposed.

¶ 14 Appellant's arguments hold little persuasive value. The record demonstrates appellant has a long history of violent crimes, which have necessitated transfers to six different state penitentiaries. Record, No. 30, Joint Exhibit 1, LTSU Procedures. This evidence clearly reveals that appellant has been unable, or unwilling, to control himself in the general population. While we recognize the inherent psychological dangers in detaining a prisoner in solitary confinement for long periods of time, appellant already has served his 360–day minimum term (appellant's brief at 11) and there is no evidence of record demonstrating he has suffered adverse psychological effects. Appellant does not even allege as much.

¶ 15 There is, however, one aspect of this case that gives us pause. The term imposed on appellant is "not less than 360 days," which theoretically allows for appellant to be segregated for the remainder of his sentence. The Commonwealth has mitigated these concerns by presenting us with evidence demonstrating that every LTSU prisoner's status is reviewed at 30–day intervals in order to determine whether less restrictive confinement is warranted. Record, No. 30, Joint Exhibit 1, LTSU Procedures. The Commonwealths' evidence also shows that its procedures allow for an LTSU inmate to be released

from the unit at any time. *Id.* In this regard, we defer to the Department of Corrections and note that we have no reason to suspect the Department will not follow its own procedures in handling appellant. *See McGee, supra* at 759. Consequently, if appellant wishes to escape the predicament in which he has placed himself, he need only comply with the most basic of behavioral guidelines. *Id.*[8]

¶ 16 In conclusion, we do not believe the degree and character of the punitive aspect of appellant's term of solitary confinement is such that it is grossly disproportionate to appellant's offense or the remedial purpose of the Department of Corrections. *McGee, supra* at 757, *citing Hudson, supra* at 99, 118 S.Ct. 488, *accord McGee, supra* at 759 n. 7, *citing Hernandez–Fundora, supra* at 807. To the contrary, given appellant's history of violent activity and repeated inability to blend in with the general prison population, we conclude the term of solitary confinement was appropriate and does not bar a subsequent criminal prosecution for the same conduct under the Double Jeopardy Clause of the United States Constitution.

¶ 17 Order affirmed.

---

8. The type of behaviors the Department considers in determining whether an inmate in the LTSU should be placed in less restrictive conditions include maintaining a clean cell, maintaining personal hygiene, responding to authority, interacting positively with other inmates, and maintaining a positive demeanor. Record, No. 30, Joint Exhibit 1, Long–Term Segregation Unit Procedures. These requirements are *de minimis.*