J-S56013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES LINCOLN STRONG | |
| Appellant | No. 2118 MDA 2013 |

Appeal from the Judgment of Sentence June 29, 2011
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000490-1984

BEFORE:  PANELLA, J., WECHT, J. and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 10, 2014**

Appellant, James Lincoln Strong, appeals from the judgment of sentence entered on June 29, 2011, in the Court of Common Pleas of Luzerne County. We affirm.

For a detailed recitation of the facts and procedural history, we refer the reader to the trial court's opinion filed on December 17, 2013. On May 25, 2011, following a remand for a new trial by our Supreme Court,[1] Strong

_____

[*] Retired Senior Judge Assigned to the Superior Court.

[1] On November 29, 2000, our Supreme Court determined that Strong had established a due process violation as the Commonwealth failed to disclose exculpatory information concerning the credibility of its key witness thereby warranting the grant of a new trial. The Court noted that "the Commonwealth's failure to comply with **Brady** is a violation of the Fourteenth Amendment of the United States Constitution." **Commonwealth v. Strong**, 761 A.2d 1167, 1175 (Pa. 2000). "That violation undermined the
*(Footnote Continued Next Page)*

was convicted of first-degree murder, kidnapping and robbery, related to the slaying of James Henry Strock on August 18, 1983, in Luzerne County. Strong was sentenced on June 29, 2011 to life imprisonment without parole on the first-degree murder conviction, followed by a consecutive period of 90 months' to 20 years' imprisonment on the kidnapping conviction and a consecutive period of 102 months' to 20 years' imprisonment on the robbery conviction. Strong filed a post-sentence motion, which was later denied by the trial court. This timely appeal followed.

On appeal, Strong raises the following issue for our review:

A. Is the Defendant entitled to a dismissal of all charges and discharge when the Commonwealth has engaged in individual instances and cumulative and continuous course of conduct going back to his first trial which was intended to provoke the Defendant to move for a mistrial and also intentionally undertaken to deprive the Defendant of a fair trial and designed to secure a conviction in violation of the Double Jeopardy Clause of the Federal Constitution, Fifth Amendment and the Pennsylvania Constitution, Article I, Section 10?

Appellant's Brief, at 4.

"An appeal grounded in double jeopardy raises a question of constitutional law." *Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (citations omitted). Our standard of review "as to whether the

*(Footnote Continued)* ────────────

truth-determining process so that no reliable adjudication of [Strong's] guilt or innocence could have taken place." *Id*. (internal citations omitted) (brackets added).

Double Jeopardy Clause has been violated is one of pure law and, as such, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Drain***, 921 A.2d 16, 18 (Pa. Super. 2007) (citation omitted).

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects an individual against successive punishments and successive prosecutions for the same criminal offense." ***Commonwealth v. Szebin***, 785 A.2d 103, 104 (Pa. Super. 2001) (citation omitted). "In Pennsylvania, jeopardy does not attach and the constitutional prohibition against double jeopardy has no application until a defendant stands before a tribunal where guilt or innocence will be determined. In a criminal jury trial, jeopardy attaches when the jury is sworn." ***Vargas***, 947 A.2d at 780 (internal citations omitted).

However, "there is very extensive and long-standing appellate court authority in this Commonwealth which clearly recognizes that an appellant who has secured a new trial on his own motion, whether on direct appeal or on collateral review, may generally not be heard to assert that the new trial so secured is barred by constitutional protections against double jeopardy." ***Commonwealth v. Barber***, 940 A.2d 369, 374 (Pa. Super. 2007).

> The constitutional guarantee against double jeopardy protects a defendant in a criminal proceeding against multiple punishments or successive prosecutions for the same offense. In general, when a mistrial is granted on a defendant's motion, or with his consent, the principles of double jeopardy do not bar a subsequence reprosecution. The only exception to the rule permitting retrial is where the defendant's mistrial request is

- 3 -

necessitated by prosecutorial error committed intentionally to force the accused to move for a mistrial, thereby affording the prosecution another, possibly more favorable opportunity to convict. When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar a retrial.

*Commonwealth v. Yost*, 451 A.2d 549, 550-551 (Pa. Super. 1982) (citations omitted).

Subsequent to *Yost*, the Pennsylvania Supreme Court clarified this standard by stating "that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992). *See also Commonwealth v. Strong*, 825 A.2d 658 (Pa. Super. 2003).

Here, Strong argues that the Commonwealth committed "so many egregious instances of misconduct," which resulted in an "intentional undertaking to prejudice" Strong to the point of denial of a fair trial. Appellant's Brief at 23. Strong believes retrial should be barred. We disagree.

After a thorough review of the voluminous certified record, as well as the briefs of the parties, we are confident that the trial court ably and methodically reviewed the validity of Strong's double jeopardy challenge. In his comprehensive opinion, President Judge Thomas F. Burke, examined each of Strong's claims of prosecutorial misconduct and properly reasoned

that retrial is not barred by the Double Jeopardy Clause. We can find no error in the trial court's reasoning and, as such, we affirm on the basis of Judge Burke's well-written memorandum opinion filed pursuant to Pa.R.A.P. 1925(a). *See* Trial Court Opinion, 12/17/13.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014

COMMONWEALTH OF PENNSYLVANIA  :   IN THE COURT OF COMMON PLEAS
                                  :        OF LUZERNE COUNTY
                                  :
               vs.             :          CRIMINAL DIVISION
                                  :
                                  :
JAMES LINCOLN STRONG        :        NO.  490  of    1984

## ORDER

AND NOW, this __17th__ day of December, 2013, it is hereby ORDERED, ADJUDGED AND DECREED that:

1. The Clerk of Court of Luzerne County is ORDERED AND DIRECTED to serve a copy of this Order and 1925(a) Opinion to all counsel of record pursuant to Pa.R.Crim.P. No. 114.

2. The Clerk of Court of Luzerne County is ORDERED AND DIRECTED to docket this Order and 1925(a) Opinion and to forthwith transmit the record to the Superior Court of Pennsylvania.

BY THE COURT:

_Thomas F. Burke Jr._
                       P.J.

Stefanie Salavantis, Esquire, District Attorney
Thomas M. Marsilio, Esquire

17



COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                             :        OF LUZERNE COUNTY

                                         :

                     vs.                      :        CRIMINAL DIVISION

                                         :

JAMES LINCOLN STRONG            :        NO. 490 of 1984

## OPINION

### Procedural History

This case involves the slaying of John Henry Strock (hereinafter "Strock") on August 18, 1983, in Luzerne County, Pennsylvania. On October 30, 1984, James Lincoln Strong (hereinafter "Strong") was convicted of first-degree murder of Strock, and sentenced to death. The judgment of sentence was affirmed in *Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479(1989), *cert. denied*, 494 U.S. 1060 (1990). In 1995, Strong filed a *pro se* Petition for Post Conviction Collateral Relief. Counsel was appointed to assist Strong and an amended Petition was filed. Evidentiary hearings on said Petition were held on April 7 and 8, 1997, and on May 8, 1997. On June 30, 1998, the trial court denied the Petition. Strong appealed. The Supreme Court of Pennsylvania accepted the appeal and, in a judgment dated November 29, 2000, held that the Commonwealth's failure to disclose an understanding it had with a key witness in the case, James Alexander (hereinafter "Alexander"), was in violation of the mandates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). Accordingly, the case was remanded to this court for a new trial.

Pretrial motions filed by both the Commonwealth and Strong were disposed of by Order and Opinion of the trial court dated September 4, 2001. Both parties appealed. On April 23, 2003, the Superior Court of Pennsylvania affirmed in part and reversed in part the pretrial rulings of the trial court. The sole reversal of the trial court's rulings concerned the admissibility of the prior testimony of Alexander, who had since died and was unavailable to testify at the new trial. The Superior Court ruled that Alexander's prior testimony, both at trial and at the subsequent hearing on Strong's Petition for Post Conviction Collateral Relief, was admissible. On May 8,

2003, Strong filed a Motion for Reconsideration, which was denied by the Superior Court on July 3, 2003.

On August 7, 2003, Strong filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania. Said Petition was denied. On March 30, 2004, Strong filed a Petition with the Supreme Court of Pennsylvania asking the Court to reconsider its denial of Strong's Petition for Allowance of Appeal based upon *Crawford v. Washington*, 124 S.Ct. 1354 (2004), a U.S. Supreme Court decision dated March 8, 2004. On August 6, 2004, the request for reconsideration was denied.

On January 11, 2005, Strong filed a Petition for Writ of Certiorari with the United States Supreme Court seeking to have the issue of Alexander's prior testimony decided in light of *Crawford, supra.* On March 24, 2005, the Petition was denied. On or about May 19, 2005, Strong filed a "Supplemental Defense Motion to Preclude the Prior Recorded Testimony of James Alexander" with the trial court. Said Motion sought to exclude Alexander's testimony in light of *Crawford, supra.* On August 18, 2005, the trial court heard argument on said Motion. The Motion was denied on September 9, 2005. Strong then filed a Motion to have the *"Crawford"* issue certified for appellate review. On October 19, 2005, the trial court denied Strong's Motion to Certify for Appellate Review.

On February 2, 2006, a Petition for Allowance of Appeal was filed in the Supreme Court of Pennsylvania. Said Petition was denied on August 9, 2006. Strong then filed a Petition for Writ of Certiorari with the United States Supreme Court. On February 20, 2007, that Petition was denied.

On June 20, 2007, Strong filed a Motion to Dismiss Based Upon the Double Jeopardy Protections of the United States Constitution, U.S. Const. Amends. V and XIV. In said Motion, Strong related his challenge to the Superior Court's decision concerning the admission of Alexander's prior testimony "given the immediacy thereon of the U.S. Supreme Court's decision

2

in [*Crawford*] and the fact that the Superior Court had not had the opportunity to address the *Crawford* question in its decision." By Order dated June 21, 2007, the trial court denied the Motion. On July 12, 2007, a Notice of Appeal was filed to the Superior Court of Pennsylvania, raising the Double Jeopardy issue. On July 24, 2008, the Superior Court of Pennsylvania Affirmed the trial court's denial of the Motion to Dismiss. On August 7, 2008, Strong requested reargument or reconsideration in the Superior Court. On October 1, 2008, the Superior Court denied Strong's request. Strong then filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania; said Petition was filed on October 31, 2008. On April 29, 2009, the Petition was denied. Reconsideration of the Petition for Allowance of Appeal was likewise denied on June 9, 2009.

From June 9, 2009, until trial, a number or pretrial motions were litigated and disposed of by the trial court. Retrial in this matter began with jury selection on May 9, 2011. Jury selection was completed on May 14, 2011. (N.T. at 9). The jury was sworn on May 16, 2011 at 11:31 a.m. (N.T. at 33). On May 25, 2011, the jury returned with a verdict of guilty to all counts of the Information. Strong was sentenced on June 29, 2011 to life imprisonment without parole on the charge of First Degree Murder; a consecutive sentence of ninety (90) months minimum to twenty (20) years maximum on the charge of Kidnapping; and a consecutive sentence of one hundred and two (102) months minimum to twenty (20) years maximum on the charge of Robbery. Two counts of Theft by Unlawful Taking merged with the charge of Robbery.

Strong filed a Post-Sentence Motion on July 11, 2011, which was denied by the trial Court on November 8, 2011. A Notice of Appeal to the Superior Court was filed on December 7, 2011. Upon receipt, the trial court issued an Order directing Strong to file a Concise Statement of Errors Complained of on

3

Appeal pursuant to Pa.R.A.P. 1925(b). The trial court's Order also directed the Commonwealth to file a response to said Concise Statement within twenty-eight days of the date of the Order. Strong served the trial court with his Concise Statement on January 4, 2012. The Commonwealth requested, and was granted, an extension of time to file its Response to the Concise Statement. The Commonwealth's Response was filed on January 23, 2012. On February 16, 2012, the trial court submitted a written Opinion pursuant to Pa.R.A.P. 1925(a).

On February 24, 2012, the Superior Court of Pennsylvania received the Record and the Opinion of the trial court. Strong requested and was granted a number of extensions of time within which to file his brief in the Superior Court. Ultimately, by Order dated October 18, 2012, the Superior Court dismissed the appeal for failure to file a brief. On May 8, 2013, the trial court appointed new counsel for Strong. On September 27, 2013, Strong filed a Motion for Post Conviction Collateral Relief, alleging ineffective assistance of past counsel for his failure to file a brief with the Superior Court as aforestated. On October 17, 2013, the Commonwealth filed a Response to Strong's Motion and therein acknowledged the ineffectiveness of Strong's prior counsel. On October 24, 2013, Strong's Motion for Post Conviction Collateral Relief was granted by the trial court, and Strong's direct appeal rights were reinstated.

On October 29, 2013, Strong filed a Notice of Appeal. On November 1, 2013, new counsel was appointed to represent Strong on appeal. As per a directive from the trial court, on November 25, 2013, Strong filed a Concise Statement of Matters Complained of on Appeal (hereinafter "Concise Statement"). On December 2, 2013, the Commonwealth filed a Response to

4

Strong's Concise Statement. This Opinion is submitted pursuant to the Court's

obligation set for in Pa.R.A.P. 1925(a).

## Law and Discussion

In his Concise Statement, Strong challenges the sufficiency of the

Commonwealth's evidence with regard to his conviction for first degree murder.

(Concise Statement at ¶57(g)).[1] The standard with regard to a sufficiency

argument is well settled:

**When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.**

*Commonwealth v. Habay*, 934 A.2d 732 (Pa.Super. 2007).

As stated above, this case involves the slaying of John Henry Strock on August 18, 1983

in Luzerne County, Pennsylvania. On August 18, 1983, John Henry Strock was driving a white

Ford Granada along Route 81 in Green Castle, Pennsylvania. Mr. Strock stopped his car on the

side of the road and offered a ride to two hitchhikers, Strong and James Alexander. According to

the testimony of Alexander, Alexander put his luggage in the trunk of the car while Strong kept

his luggage with him. (N.T. at 967). Strong's luggage contained a .20 gauge sawed-off shotgun.

---

[1]The court will address this sufficiency of the evidence issue out of order
and first in order to give a background to this case.

(N.T. at 967). Alexander sat in the front seat, passenger's side while Strong sat in the backseat. (N.T. at 967). While traveling north on Route 81, Alexander fell asleep. (N.T. at 968).

When Alexander woke, he observed Strong produce a .20 gauge sawed-off shotgun and rested it upon Mr. Strock's shoulder. (N.T. at 968). Strong directed Mr. Strock to pull the car to the side of the road and exchange seats with Alexander, so that Alexander could drive the car. (N.T. at 969). After driving for some time, Alexander pulled the car to the side of the road along an isolated stretch on Route 81 in Dorrance Township. (N.T. at 969). Alexander walked into the woods a few steps in order to relieve himself. When Alexander returned to the car, Strong and Mr. Strock were not present. (N.T. at 970). Alexander then heard a gunshot and a scream. Approaching the sound of the gunshot, Alexander saw that Mr. Strock had been shot, and that his body had fallen into a gully. Strong was holding a shotgun. (N.T. at 971-972). Alexander asked Strong why he had shot Mr. Strock. Strong replied that he was tired of leaving witnesses behind. (N.T. at 973). Strong directed Alexander to go through Mr. Strock's pockets, and Alexander complied, handing the items to Strong. (N.T. at 974). Strong then walked back down into the gully. Alexander heard another gunshot. Strong returned to the car a short time thereafter. (N.T. at 975-976).

Alexander and Strong got back into the Ford Granada and continued their journey north on Route 81. (N.T. at 976). They ultimately abandoned Mr. Strock's Granada when it ran out of gas. They removed some of Mr. Strock's personal belongings from the car and began to hitchhike. (N.T. at 980-982). Strong and Alexander continued hitchhiking until they were apprehended in Potsdam, New York. (N.T. 990 -992). At the time of their arrest, Potsdam law enforcement officers discovered a .20 gauge shotgun in Strong's belongings. (N.T. 992). While in the custody of the New York police, Alexander agreed to cooperate with authorities and assist them in locating Mr. Strock's body. Upon returning to Pennsylvania, Alexander assisted the Pennsylvania State Police in locating the body.

6

Alexander was one of forty-one witnesses to testify of behalf of the Commonwealth. His testimony alone, viewed in light of the standard set forth above, is sufficient evidence to warrant the verdict rendered by the jury.

At ¶57(a) of his Concise Statement, Strong complains that the trial court erred or abused its discretion in failing to grant a mistrial on each individual instance when requested during the course of the trial. In support of this general allegation, Strong discusses a number of instances in which the trial court denied his motion for mistrial. The court will discuss the instances in the order they are set forth in Strong's Concise Statement.

On March 24, 2011, Strong filed a Motion in Limine, seeking to preclude the use of victim impact evidence. The Motion was granted in a pretrial ruling from the bench. (N.T. at 18-21). In his opening statement to the jury, the Assistant District Attorney referred to the victim, Mr. Strock, as an "Army veteran" who "worked as a railroad consultant." (N.T. at 66). Strong objected and moved for a mistrial, stating that the reference was victim impact evidence. The Commonwealth argued that evidence at trial would show that Mr. Stock was identified through his Army records, making the reference permissible. (N.T. at 66-67). The court denied the motion for mistrial, and cautioned the Assistant District Attorney against discussing "character qualities of the victim." (N.T. at 67). The court finds that since there was a reasonable basis for the prosecutor's comments, and the mention was not meant to create hostility or prejudice against Strong, the ruling to deny the mistrial was not in error. *See, Commonwealth v. Miles*, 545 Pa. 500, 681 A.2d 1295 (1996), *cert. denied* 520 U.S.1187 (1997).

Strong next argues that the Assistant District Attorney violated the court's pretrial ruling on the prohibition of certain "bad acts" attributable to Strong. Prior to trial, the court ruled that prior acts of Strong, specifically two armed robberies of gas stations in Georgia which occurred over a two day period only nine days prior to the slaying of Mr. Strock, were admissible to

7

establish Strong's identity as the perpetrator in the instant case.[2] During his opening statement, the Assistant District Attorney began to describe the circumstances and details of the two armed robberies of the Georgia gas stations. Strong objected to the detail provided by the prosecutor. (N.T. at 59). The trial court ruled that "[i]t's sufficient to allow you [the Assistant District Attorney] to make reference to what you believe are similar incidents involving the use of a similar firearm and subject to the Court deferring onto how far it will go in allowing particulars with regard to matters of evidence as it related to the Catoosa County [Georgia] incidents." Thus, the trial court gave the Assistant District Attorney some leeway in proceeding with his description of the Georgia incidents. The prosecutor continued with his description of the Georgia incidents, and Strong again objected to the representations made. The court then "drew the line," sustaining Strong's objection. (N.T. at 64-65).

Strong's argument on this point is somewhat confusing. Strong never did request a mistrial on this issue, but rather argues that the prosecutor's remarks were an attempt to "overreach and prejudice the defendant to the point of denial of a fair trial," and that the circumstances of Strong's attempted arrest were never elicited at trial. (Concise Statement at ¶26). Thus, the court will consider this argument with Strong's allegation of the cumulative effect of the prosecutor's remarks, but also points out that these remarks were made during the Commonwealth's opening statement. Opening statements are not evidence, and the jury was so instructed. (N.T. at 54-55). Because an opening statement is not evidence, it is not binding on the accused or on the Commonwealth. However, the failure to provide evidence promised in an opening statement may fairly be commented on by the opposing party in closing, and the party

---

[2]On August 6, 2001, at a hearing on pretrial motions, with regard to the issue of "bad acts" evidence under Pa.R.E 404(b), the trial court ruled that "with respect to the proffered testimony relative to alleged wrongs or acts attributed to the Defendant occurring during calendar year 1983, the Court, taking into account that the Commonwealth offers such evidence in support of establishing identity, denies the defense motion, and said evidence is admissible for the aforesaid purpose." (8/6/01 N.T. at 71).

8

may do so if it chooses. *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582 (1988). But, based upon the leeway given to the Commonwealth by the trial court's ruling, it cannot be said that the prosecutor overreached to the point of denying Strong a fair trial.

Strong's next complaint deals with the prosecutor's actions during the testimony of Commonwealth witness Catherine Theisen. Ms. Theisen was qualified as an expert in the field of DNA analysis without objection from Strong. (N.T. at 868). She testified as to her analysis of five hairs, one hair that was identified as coming from tape on the butt of a gun and four hairs identified as coming from a vehicle. (N.T. at 876-877). She also performed analysis on a dried blood sample coming from Strong in order to determine if Strong could be the source of the hair. (N.T. at 877). Ms. Theisen testified that four of the hairs could not have come from Strong. However, she testified that Strong could not be excluded as a DNA type of one of the hairs from the vehicle. (N.T. at 878). She testified that she "wouldn't expect to see that type in more than .59 percent of the population." (N.T. at 880). Yet, when asked by the Commonwealth whether she could state her opinion with a reasonable degree of scientific certainty, she replied that she "would be uncomfortable saying that." (N.T. at 880). When asked if her opinions were stated with a reasonable degree of professional certainty, she stated that "we shy away from terms like that. They are - - the results that we obtained from searching our database and we go through multiple review processes, and they are what we consider the results that we obtain from this case." (N.T. at 880-881). At that point, Strong moved to strike the testimony of Ms. Theisen. (N.T. at 882). After taking a brief recess to research the issue, the trial court sustained the objection and instructed the jury that they were to disregard Ms. Theisen's testimony for all purposes. (N.T. at 884-885). The trial court also denied the Commonwealth's request to recall Ms. Theisen. (N.T. at 884-885). The issue raised by Strong and the subject of his oral motion for mistrial, deals with a matter that took place during the trial court's brief recess. At sidebar, defense counsel stated the following:

9

And I want to bring something else to the Court's attention. You know, something happened here. After the court left the bench, the witness got off the stand and began conferring with [the prosecutor]. I approached [the prosecutor] and said I hope you aren't speaking about the substance of her testimony because she's in the box. [The prosecutor] said there's no Court Order telling me I can't speak with this witness about her content. And I'm going to - - I think it's inappropriate and it's absolutely impermissible for [the prosecutor] to glean further information on this issue from the witness while she's on the stand and then ask this Court to reopen testimony so that he can then close up his hole. And I think - - at this point, I'm going to move for a mistrial and I'm going to ask for sanctions.

(N.T. at 884-885). As stated above, the court did not permit the recall of Ms. Theisen. Since the subject testimony was stricken and the jury was instructed to disregard it for all purposes, and the Commonwealth was prohibited from recalling Ms. Theisen, the court took all action necessary to negate the impact of the testimony on the jury. Further, the court does not find that the actions of the prosecutor were even known to the jury, and thus could not have prejudiced Strong in any way. Thus, the motion for mistrial must fail.

Strong further complains about a remark made by the Assistant District Attorney during his closing argument. Near the end of the Commonwealth's closing argument, the following discourse took place:

[Asst. D.A.]: And when we say Lincoln, I find that a very unusual middle name, all right, and for this reason, relevant to the case. What did Lincoln say? With charity toward all and malice towards none. And, ladies and gentlemen of the jury, there's one person - - and he's not here to testify - - that acted with charity towards all and malice towards none.

[Defense Counsel]: Your Honor, objection, that's impact testimony.

[The Court]: Sidebar.

(Whereupon, the following discussion occurred at sidebar).

[Defense Counsel]: Judge, I just heard [the Asst. D.A.] say as he displayed a photograph of the victim, now for a third time during his closing argument he displayed a photograph of the victim,

10

that Mr. Strock acted with charity. This was the subject of a pretrial motion. This Court has instructed [the Asst. D.A.] not to get into the realm of the victim impact evidence which would include the history, nature and characteristics of the victim. We have, I believe, fairly successfully avoided a problem until this closing argument by stating that Mr. Strock acts with charity. He is absolutely in the realm of victim impact despite this Court's cautionary instruction to him. And we are now moving for a mistrial.

(N.T. at 1405-1406). The court denied the motion for mistrial and went on to instruct the jury to disregard the comment made by the Assistant District Attorney. (N.T. at 1407). Strong complains that the Assistant District Attorney's reference to Mr. Strock being charitable like Lincoln was in violation of the court's rulings against the admission of victim impact evidence and was an attempt to prejudice Strong to the point of denying him a fair trial. (Concise Statement at ¶37).

The court recognizes that the Assistant District Attorney's suggestion that Mr. Strock was the only person that acted with "charity towards all and malice toward none," may be considered victim impact evidence as defined by 42 Pa.C.S.A. §9711. However, even if it satisfies the definition of such evidence, the remark was no so extensive as to prejudice the jury to the point that it could not render a true and fair verdict. *See, e.g., Commonwealth v. Fisher*, 559 Pa.558, 741 A.2d 1234 (1999). Relief is always available to correct these situations where prejudicial information is introduced, and the court properly instructed the jury to disregard the passing reference and ordered it stricken from the record. Accordingly, the motion for mistrial was properly denied.

At ¶¶57(b), (c), and (d) of his Concise Statement, Strong complains that the trial court erred in failing to dismiss the charges against Strong or to grant him a new trial because the cumulative course of conduct and overrreaching by the Commonwealth was intended not only to provoke the Defendant to move for a mistrial, but, also was intentionally undertaken to deprive

11

the Defendant of a fair trial and designed to secure a conviction in violation of the Double Jeopardy Clause of the Federal Constitution, Fifth Amendment, and the Pennsylvania Constitution, Article 1, Section 10. In support of this contention, Strong asks the court to consider the remarks made by the Assistant District Attorney in his opening and closing statements as discussed above, his actions with regard to Ms. Catherine Theisen as discussed above, a *Sartin* violation committed by the Commonwealth[3], and the fact that the case was originally remanded because of prosecutorial misconduct involving a *Brady* violation by the Commonwealth. Strong alleges that he has suffered actual prejudice by the cumulative effect of the misconduct committed by the Commonwealth. (Concise Statement at ¶51-52).

The court finds that because the challenged incidents of misconduct were either proper actions on the part of the Commonwealth, were cured by the trial court's instructions, or were appropriately sanctioned, we cannot accept Strong's cumulative-effect argument. *See, Commonwealth v. Johnson*, 719 A.2d 778 (Pa.Super. 1998); *Miles, supra.* Moreover, Strong's reliance upon *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), in support of its prosecutorial overreaching contention is misplaced. In analyzing the prosecutor's conduct under the standards set forth in *Smith*, it is essential to determine whether the unavoidable effect of the contested comments or actions was to prejudice the jury, forming in their minds a fixed bias and

---

[3]*Commonwealth v. Sartin*, 561 Pa. 522, 751 A.2d 1140 (2000) instructs that when a defendant places his mental health status at issue, he may be subjected to compulsory examination by court-appointed psychiatrists, and psychiatric testimony may be introduced by the Commonwealth to rebut the defendant's mental status without violating the Fifth Amendment. However, the results of the examination must be placed under seal until such time as the penalty phase commences and the defendant declares his intent to present his own psychiatric evidence in mitigation. *Id.* Presently, Dr. John O'Brien conducted a psychiatric evaluation of Strong on behalf of the Commonwealth. Dr. O'Brien's report was sent directly to the Commonwealth, and not placed under seal, in direct violation of the rules espoused in *Sartin*. Accordingly, the court sanctioned the Commonwealth by prohibiting the Commonwealth from using the information contained in Dr. O'Brien's report and precluding Dr. O'Brien from testifying at trial.

12

hostility toward the accused so as to hinder an objective weighing of the evidence and to impede the rendering of a true verdict. *Id.*; *Commonwealth v. Chmiel*, 777 A.2d 459 (Pa.Super. 2001). The court can find no evidence that the Commonwealth acted in bad faith or that it possessed a specific intent to deny Strong a fair trial. As stated above, the contested acts of the prosecutor were properly remedied by the court so as to ensure the rendering of a true verdict. Thus, Strong's argument must fail.

Strong next complains that the trial court erred in admitting his testimony from the first trial, which was reversed as a result of a *Brady* violation on the part of the Commonwealth, when he did not voluntarily and knowingly waive his 5th Amendment Constitutional Right to remain silent and refrain from testifying at retrial. (See Concise Statement at ¶57(e)). It is generally held that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his Fifth Amendment privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982); *Commonwealth v. Ferguson*, 358 Pa.Super. 98, 516 A.2d 1200 (1986). Additionally, it is well-settled that the admission of evidence is subject to the broad discretion of the trial court. *Commonwealth v. Galloway*, 711 A.2d 65 (2001). Thus, this court finds that when Strong took the stand in his first trial without asserting his privilege against self-incrimination, he thereby waived the privilege as to the testimony given, and that privilege cannot be reclaimed in any subsequent trial of the same case.

Finally, Strong complains that the trial court erred in allowing the admission of prior testimony of James Alexander where the admission of such testimony was contrary to and/or in violation of the Confrontation Clause of the United States Constitution, 6th Amendment, *Crawford v. Washington*, 124 S.Ct. 1354 (2004) and the Pennsylvania Constitution, Article I,

13

sect. 9 and or subverts the intended protections of the Double Jeopardy Clause of both the United States and Pennsylvania Constitutions. (Concise Statement at ¶57(f)).[4]

On April 23, 2003, the Superior Court of Pennsylvania issued an Opinion which reversed the decision of the trial court regarding the admissibility of the testimony of James Alexander. The Superior court opined that "the trial court erred in excluding Alexander's former testimony, both at trial and at the PCRA hearing..." (Opinion at 10). In so holding, the Superior Court reasoned that in order for the prior testimony of an unavailable witness to be admissible at a subsequent proceeding, the defendant against whom the testimony is to be admitted must have been afforded **a full and fair opportunity to cross-examine the witness** at the first proceeding. (Opinion at 5)(emphasis original). The Superior Court found it critical to its determination that "Strong was given the opportunity to confront Alexander regarding his expectation of leniency in exchange for his testimony." (Opinion at 7). Thus, combining Alexander's trial testimony with his testimony at the hearing on Strong's Petition for Post Conviction Collateral Relief equates to a "full and fair opportunity" to cross examine Alexander. Accordingly, the Superior Court held that Alexander's prior testimony at both trial and the PCRA hearing shall be admissible at retrial of Strong. This is the law of the case.

The law of the case doctrine is a family of rules which embody the concept that a court involved in the later phases of litigated matter should not reopen questions decided by another judge of the same court of by a higher court in the early phases of the matter. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995); *Commonwealth v. Jones*, 858 A.2d 1198 (Pa.Super. 2004). The purpose of the rule is to foster finality of pretrial rulings to promote judicial economy

---

[4]The court believes this issue to have been previously litigated, but still sets forth its reasoning for the benefit of the appellate court.

14

and efficiency. *Id.* However, the court is mindful that this rule does not apply in cases where newly developed legal authority compels a result different than that reached by another court. *Id.*

Strong further argues that *Crawford,* which was decided after the Superior Court's Opinion, is newly-developed legal authority which compels a different result. We cannot agree. In *Crawford*, the defendant stabbed a man who allegedly tried to rape his wife, Sylvia. At trial, the prosecution played for the jury Sylvia's tape-recorded statement to the police describing the stabbing, even though the defendant had no opportunity for cross examination. Sylvia did not testify at trial because of the state marital privilege barring a spouse from testifying without the other spouse's consent. The Washington State Supreme Court upheld defendant's conviction after determining that Sylvia's statement was reliable. The United States Supreme Court held that the prosecution's use of Sylvia's statement violated the Confrontation Clause because, where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation, which was absent from the case. In essence, the Court in *Crawford*, relying on historical principles which culminated in our Framers adopting the Sixth Amendment right of confrontation for criminal defendants, has chosen to abrogate the 'indicia of reliability" admissibility test set forth in *Ohio v. Roberts*, 448 U.S. 56 100 (1980), and replaced it with a single prong indicium test, namely, where testimonial evidence is at issue and the witness is unavailable, there must have been a prior opportunity for cross-examination in order for the evidence to be admissible. The present case is factually distinguishable from *Crawford* in that Strong was afforded an opportunity to confront Alexander in earlier proceedings. As aforesaid, our Superior Court reached a conclusion that Strong had a "full and fair opportunity" to cross-examine Alexander based upon a new precedent wherein Alexander's trial testimony was viewed in combination with his PCRA testimony. Accordingly, the court does not find *Crawford* controlling and thus finds no error allowing the testimony.

15

- END OF OPINION -

- ORDER ATTACHED SEPARATELY AT PAGE 17-