# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Northern York County School District | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 175 C.D. 2024 |
| | : | |
| Dover Area School District, Appellant | : | |
| | : | |
| Northern York County School District, Appellant | : | |
| | : | |
| v. | : | No. 176 C.D. 2024 |
| | : | |
| Dover Area School District | : | Argued: September 9, 2025 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                          FILED: October 8, 2025

## I.    Introduction

When a majority of the taxpayers within any contiguous geographic area seek to move from one school district to another, the process is governed by Section 242.1[1] of the Public School Code of 1949,[2] (School Code). Section 242.1(a), titled "Establishment of independent districts for transfer of territory to another district," sets

---

[1] Added by the Act of June 23, 1965, P.L. 139.
[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

forth the multi-step approval process for transferring a municipality to a different school district, and it states, in relevant part, as follows:

> (a) A majority of the taxable inhabitants of any contiguous territory in any school district or school districts . . . may present their petition to the court of common pleas . . . asking that the territory be established as an independent district for the sole purpose of transfer to an adjacent school district contiguous thereto. . . . Such petitions shall set forth a proper description of the boundaries of the territory to be included in such independent district, and the reasons of the petitioners for requesting such transfer to another school district and the name of the district into which its territory is proposed to be placed.
>
> The court shall hold hearing thereon. . . . In all cases where an independent district is proposed for transfer from one school district to another, the merits of the petition for its creation, from an educational standpoint, shall be passed upon by the [Secretary of Education] and the petition shall not be granted by the court unless approved by him. The court of common pleas shall secure the reaction from the [Secretary of Education] upon receipt of the petition properly filed.
>
> **The court, in its decree establishing such independent school district for transfer purposes, shall also determine the amount, if any, of the indebtedness and obligations of the school district, from whose territory such independent district is taken, that said district shall assume and pay, and, a statement prorating the State subsidies payable between or among the losing district or districts and the receiving district**. . . .

24 P.S. § 2-242.1(a) (emphasis added).

In the present case, after extensive litigation that culminated in two appeals to this Court and two remands to the Board of Education (Board) over the last

13 plus years, the creation of the independent school district and its transfer from one existing district to another was finally approved by the Board on March 10, 2021.[3] (Reproduced Record (R.R.) at 20a.) This appeal concerns the financial consequences of the transfer, namely, the calculation of the allocation of debt and obligations and proration of subsidies between a receiving school district and the losing school district. 24 P.S. § 2-242.1(a).

## II.    Background

In 2012, the Washington Township Education Coalition (Coalition), a nonprofit corporation, petitioned the Court of Common Pleas of York County (trial court) to create the Washington Township Independent School District (WTISD) and transfer the student population within the geographical region of Washington Township from Dover Area School District (Dover SD) to Northern York County School District (Northern York SD). There was no response to the petition. Neither Dover SD nor Northern York SD had any objection to the petition.

The Honorable Stephen P. Linebaugh (Judge Linebaugh) initially presided over the petition. After determining that the Coalition had met the threshold requirements of 24 P.S. § 2-242.1, Judge Linebaugh referred the petition to the Secretary of Education (Secretary) for an educational merits review. The Secretary

---

[3] For a summary of the history of this protracted litigation, *see Washington Township Independent School District v. Pennsylvania State Board of Education*, 153 A.3d 1177 (Pa. Cmwlth. 2017) (*en banc*) (*WTISD I*) (vacating the Board's November 19, 2015 order, disapproving the creation of WTISD and its transfer from Dover SD to Northern York SD because the Board applied the incorrect standard for reviewing the petition, and remanding with instructions that the Board follow certain administrative procedures and confine its review of the application to the standards applicable to the organization of school districts within the Commonwealth); *Washington Township Independent School District v. Pennsylvania State Board of Education*, 233 A.3d 972 (Pa. Cmwlth. 2020) (*en banc*) (*WTISD II*) (reversing the Board's January 10, 2019 order disapproving WTISD's petition and remanding for the trial court to "determine the amount . . . of indebtedness and obligations of [Dover SD], [if any, that Northern York SD] shall assume and pay, and, a statement prorating the State subsidies payable between or among [Dover SD] and [Northern York SD]").

determined the petition to be meritorious, and the matter was transmitted back to the trial court for the purpose of creating an independent school district.

### A. *The November 2014 Hearing*

On November 10, 2014, Judge Linebaugh held a hearing to confirm the establishment of an independent school district[4] and "to determine the amount of indebtedness and obligation" to be transferred from Dover SD to Northern York SD and the proper proration of state subsidies between the two districts. (R.R. at 1a, 6a.) Counsel for Dover SD, Northern York SD, and the Coalition were in attendance. The trial court called the hearing to order by stating, "the purpose of today's proceeding is for the [trial c]ourt to determine if a decree should be entered establishing the independent district of Washington Township as a school district, to determine and apportion the indebtedness and obligations of [Dover SD] which should be assumed by [Northern York SD] and also prorate the state subsidies payable to [Northern York SD] from [Dover SD]." *Id.* at 9a. No testimony or evidence was introduced or admitted at the hearing, which lasted approximately 20 minutes.

At the conclusion of the hearing, Judge Linebaugh entered an order, which is the subject of this appeal, entitled "Order Establishing Independent School District for Purposes of Transfer Pursuant to 24 P.S. § 2-242.1," designating the geographic area encompassing Washington Township as an independent school district for purposes of transfer from Dover SD to Northern York SD, and providing, in relevant part, that:

> 4. The prior findings of the Secretary of Education regarding the substantive merits of the [p]etition are incorporated by reference. **Based on the representations of counsel for the**

---

[4] The purpose of establishing the independent school district is to effectuate the transfer of a geographic area in one district to another district under Section 242.1 of the School Code. *In Re Independent School District*, 17 A.3d 977, 987 (Pa. Cmwlth. 2011).

**two districts, there are no debts or obligations of Dover [SD] which shall be assumed by Northern [York SD].**

**\*\*\*\***

6. **The transfer, when approved by the State Board of Education, will take effect July 1, 2015**.

*Id.* at 3a (emphasis added).

After the order was issued, Judge Linebaugh went back on the record and explained with respect to Paragraph 6 of his order that

> [i]t is unclear at this time how quickly the Pennsylvania Board of Education will act on the matter, and while we will enter that order, we will consider that in the event that the transfer is not approved in a timely manner so as to permit reasonable transfer of the district and adjustment of the school tax matters, that any party may file a motion requesting that the [c]ourt reopen the matter and modify its order with respect to the effective date.

*Id.* at 7a.

By April 2015, the matter was still pending before the Board, so Northern York SD filed a motion to amend the 2014 Order. (Supplemental Reproduced Record (S.R.R.) at 1b-5b.) Northern York SD asked Judge Linebaugh to make the transfer effective on July 1 during whatever year followed the Board's order. *Id.* at 2b. Judge Linebaugh granted the motion and ordered that "[t]he transfer will take effect on July 1 of the year following a final [o]rder of the [Board] approving such transfer." *Id.* at 6b-7b.

Judge Linebaugh then properly referred the petition to the Board for a determination of whether the petition met the standards of the School Code from an educational standpoint, as required by Section 242.1(a). In September of 2015, the Board disapproved WTISD's petition. WTISD appealed the Board's decision to this

5

Court. By Order dated January 20, 2017, this Court vacated the Board's decision and remanded the matter to the Board for further consideration. *WTISD I*. After remand, a hearing officer held hearings over the course of several days and issued a proposed report, findings of fact, and conclusions of law, recommending that the Board disapprove the petition. Following the filing of exceptions, by order dated January 10, 2019, the Board adopted the Proposed Report and, upon a vote by a majority of the members of the Board, disapproved WTISD's petition. WTISD again appealed to this Court.

On June 4, 2020, this Court issued its opinion in *WTISD II*. We reviewed the evidence developed before the Board and concluded that it did not support the Board's disapproval of the transfer of WTISD to Northern York SD. Having thus determined that the creation of WTISD and its transfer from Dover SD to Northern York SD should have been approved, we remanded the matter to the Board with explicit directions. We directed the Board to revise the York County organization of school districts "to reflect the assignment of WTISD to [the Northern York SD] effective with the 2021-2022 school year." *WTISD II*, 233 A.3d at 996. We also directed the Board to then "transfer the matter back to the common pleas court to oversee the implementation of the reassignment" and "to determine the amount of debt and obligations that Northern [SD] must assume and provide a statement prorating State subsidies payable between or among Dover [SD] and Northern [York SD]." *Id.*

After remand, the matter was assigned to trial court judge, Judge Clyde W. Vedder (Judge Vedder) due to Judge Linebaugh's retirement. In accordance with Judge Vedder's case management plan, the parties provided preliminary calculations and documents and submitted briefs on the issues of indebtedness and state subsidies associated with the transfer of WTISD from Dover SD to Northern York SD.

6

Regarding the indebtedness issue, Northern York SD argued that no indebtedness should transfer because Dover SD represented at the November 10, 2014 hearing that "there are no debts or obligations" and that this constituted a "binding judicial admission." (R.R. at 30a-32a.) It further argued that Dover SD should be "judicially estopped" from reversing its position because it would result in substantial prejudice to Northern York SD. *Id.* at 32a. Northern York SD claimed that it never would have sat back idly while Dover SD incurred a substantial debt since the November 2014 hearing. *Id.* at 33a. It argued that, on the contrary, it would have sought to intervene on multiple occasions, perhaps seeking injunctive relief to prevent Dover SD from engaging in significant projects, none of which will confer any benefit on Northern York SD that increased Dover SD's indebtedness. *Id.* at 33a-34a. It asserted that had it known that it would be obligated to assume such debt, it would have opposed WTIDS's efforts to transfer if Dover SD had taken the position that Northern York SD would not only have to educate hundreds of new students but also pay for facilities only Dover SD will use. *Id.*

Dover SD argued, in turn, that, based on its preliminary calculations, Northern York SD should assume $13,288,939 of its debt, which represents WTISD's portion of Dover SD's debt obligations at the beginning of the fiscal year in which WTISD was transferred to Northern York SD. (S.R.R. at 27b.) Dover SD based its calculation on the common pleas court's underlying decision in *Porter Township Initiative v. East Stroudsburg Area School District* (*Porter I*), (Pa. Comm. Pl., No. 1895-2009, filed August 3, 2011), 2011 WL 12556629, *affirmed*, *Porter Township Initiative v. East Stroudsburg Area School District*, 44 A.3d 1201, 1204 (Pa. Cmwlth 2012) (*Porter II*), in which the common pleas court developed a formula for calculating the losing school district's Section 242.1(a) "indebtedness and obligations." First, the

7

common pleas court said that "[the] proper percentage of debt to be allocated to the [receiving] [s]chool [d]istrict shall be calculated by dividing the total assessed value of Porter Township by the total assessed valued of [the losing] [s]chool [d]istrict." *Porter Township* at \*1, ¶ 11. It explained that the total assessed value is "defined as the most recent assessed value as determined by the State Tax Equalization Board . . . **effective as of the first day of the fiscal year immediately following approval of the transfer by the Pennsylvania State Board of Education**." *Id.* at \*1, ¶ 12 (emphasis added).

Next, the court stated that the receiving school district should "reimburse [the losing] [s]chool [d]istrict a percentage of the total outstanding long-term . . . obligations based on the percentage of students from Porter Township versus the total student population of [the losing] School District including those students from Porter Township." *Id.* at \*4. That figure should also be calculated "**effective as of the first day of the fiscal year immediately following approval of the transfer by the Pennsylvania State Board of Education**." *Id.* at \*2, ¶ 15 (emphasis added).

Lastly, in its conclusion, the court underscored that the calculations performed under Section 242.1(a) "shall be based upon those figures in effect **as of the first day of the fiscal year immediately following approval of the transfer by the Pennsylvania State Board of Education**." *Id.* at \*4 (emphasis added).

On appeal, this Court accepted the *Porter I* formula. Further, we explained that the debt and subsidy allocation was supposed to happen in the "third step" of the transfer process—the step where the common pleas court completes the transfer. *Porter II*, 44 A.3d at 1204. We affirmed that **"[t]he actual figures to be used in making the calculations based on these formulas will be determined at the time the transfer occurs**." *Id.* at 1210 (emphasis added).

8

Based on *Porter I* and *Porter II*, Dover SD argued that the debt allocation is determined at the time the common pleas court completes the transfer, which, in this case, was the first day of the 2021-2022 school year, not on July 1, 2015, as Judge Linebaugh projected in his November 10, 2014 order. Dover SD maintained that the passage of time and the legal and financial developments since Judge Linebaugh's order was issued in 2014 rendered Judge Linebaugh's order outdated. It contended that during the period between Judge Linebaugh's order and this Court's directive in *WTISD II*, Dover SD incurred debt so that it could continue to fulfill its statutory obligations of serving its students and future generations of students who will attend Dover SD's schools. Dover SD also argued that Judge Vedder could not follow Judge Linebaugh's order because doing so would violate this Court's mandate in *WTISD II* that the trial court must determine the amount of debt Northern York SD shall assume and pay and issue a statement prorating the state subsidies, both of which should be calculated as of the first day of the 2021-2022 school year. *Id.* Thus, according to Dover SD, this Court in *WTISD II* "made a conscious decision to give [the trial court] a particular direction to determine the amount of indebtedness anew." *Id.* at 32b.

On the subsidies issue, the parties presented the trial court with a joint position on the state subsidy allocation. They reported that they attempted on multiple occasions to confer with the Department of Education (Department) regarding the proper calculation, but the Department refused to calculate any official numbers. Therefore, the school districts calculated an increase of Basic Education Funding (BEF) in the amount of $725,669 and Special Education Funding (SEF) in the amount of $139,755, based on the transfer of 213 students to Northern York SD. Additionally, the school districts requested that Dover SD receive no decrease in subsidy allocation, which they imply was an equitable request due to the extenuating circumstances

relating to this lengthy court process. (R.R. at 36a.) The Department responded that it was under no obligation to perform a calculation regarding the proration of the subsidies. It believed the school districts failed to properly prorate the subsidies, and that the provision of an additional subsidy to Northern York SD without any corresponding reduction in subsidy to Dover SD fails to meet the School Code's requirement to "prorate" the subsidies. Instead, argued the Department, the school districts' proposal constitutes an unlawful net increase that the Department cannot distribute without express authorization of the General Assembly. The Department declined to express what the correct subsidy proration should be, maintaining that it is not obligated to make official calculations since the School Code does not provide for any role by the Department in the performance of the calculation.

On January 20, 2024, Judge Vedder entered an order, concluding that (1) **no indebtedness or obligation is due and owing** to Dover SD by Northern York SD; and (2) Northern York SD shall receive an additional subsidy of $1,014,875.10, with this amount being deducted from Dover SD's subsidy allocation, effective as of the 2021-2022 school year.

In his accompanying decision dated January 22, 2024, Judge Vedder first accepted Dover SD's position that *Porter I* sets forth the correct formulas to calculate the apportionment of indebtedness and obligations. Specifically, Judge Vedder agreed that once the losing school district establishes its entitlement to the payment of its indebtedness and obligations, the trial court must apply two formulas to calculate the apportionment of indebtedness and obligations:

> First, the proper allocation of the debt should be calculated by multiplying the Local Effort Requirement of the original district's accrued debt with the independent district's proportion of the original district's total assessed value (total assessed value of the transferred township divided by the

10

total assessed value of the original district, including independent district). [*Porter I*, 2011 WL 12556639,] at [*]1. Importantly, the assessed values are the most recent assessed values as determined by the State Tax Equalization Board, effective as of the first day of the fiscal year immediately following approval of the transfer by the Board. *Porter II*, 44 A.3d at 1207. Next, the proper allocation of outstanding obligations shall be calculated by multiplying the total outstanding obligations and contracts of the original district with the percentage of students of the independent district compared to the total, overall number of students of the original district. *Porter I*, 2011 WL 12556639[,] at [*]2-[*]3. ("the percentage of students . . . shall be calculated effective as of the first day of the fiscal year immediately following approval of the transfer by the Pennsylvania State Board of Education").

(Trial ct. op., January 22, 2024, at 13.)

Next, Judge Vedder concluded that Judge Linebaugh's November 10, 2014 order represented a final, binding order with respect to debt transfer, and, therefore, the law of the case doctrine precluded him from reopening a discussion regarding indebtedness and long-term obligations. *Id.* at 19. Citing *Ario v. Reliance Insurance Co.*, 980 A.2d 588, 597 (Pa. 2009), Judge Vedder observed that

"a court involved in a later phase[] of a litigated matter should not reopen questions decided by another judge of that same court . . . in the earlier phases of the matter." This concept exists to "protect the settled expectations of the parties[,] . . . ensure uniformity of decisions . . . [and] to maintain consistency during the course of a single case." *Neidert v. Charlie*, 143 A.3d 384, 390-391 (Pa. Super. [] 2016). Based on this, **Judge Linebaugh's explicit final determinations regarding indebtedness and obligations, represent questions directly decided by "another judge of [the] same court." Therefore, the [c]ourt is duty bound to protect the settled expectations of the parties, specifically Northern [York SD]'s belief that it would not**

11

**be required to cover any of Dover [SD]'s debts or obligations, as Northern [York SD] specifically relied on this expectation when it decided to "sit on the sidelines" during subsequent legal proceedings.**

*Id.* at 18-19 (emphasis added).

Judge Vedder also considered that Dover SD did not object and further stipulated to Paragraph 4 of the November 10, 2014 order establishing that no debt or obligations would be transferred to Northern York SD. *Id.* at 15.

Judge Vedder also rejected Dover SD's argument regarding the obligatory nature of this Court's instructions in *WTISD II*, explaining that

> neither opinion rendered by the Commonwealth Court reversed or vacated any portion of Judge Linebaugh's determinations. Of the two, only *WTISD II* referenced this [c]ourt in its directive and simply outlined that after the [c]ourt received Board approval it was to
>
>> oversee the implementation of the reassignment. In particular, but without limitation, the common pleas court must determine the amount of indebtedness and obligations of Dover SD, **if any**, that Northern York SD shall assume and pay, and a statement prorating the State subsides payable between or among [the districts].
>
> Importantly, this directive does not state that the [c]ourt is to determine the issue of debt and obligations "anew" but simply restates the [c]ourt's statutory responsibility to "determine the amount[s] . . . **if any**" within the current context of finally implementing the reassignment.

(Trial ct. op., January 22, 2024, at 18-19) (footnote omitted) (emphasis in original).

Judge Vedder added, "for argument's sake," that if this Court did intend to direct it to make new findings regarding indebtedness and obligations, then, based

on current circumstances and the formula outlined by the trial court in *Porter Township*, the trial court believes that Northern York SD would generally owe Dover SD around $12,426,418. *Id.* at 19, n.8. However, Judge Vedder noted that before a final determination could be made, it would "need to conduct further hearings to more properly assess Northern [York SD's] arguable claim for detrimental reliance and to have Dover [SD] more explicitly justify its entitlement to each obligation outlined." *Id.*

With regard to the proration of subsidies, Judge Vedder adopted the Department's recommendation that the proration of subsidies "should be done on the total amount of subsidy (Base plus Student weighted)" and use "the number of students transferred as a representation of the total student population." *Id.* at 21 (footnote omitted). Further, Judge Vedder believed two specific subsidies are directly implicated: BEF and SEF. Using the Department's suggested formula, Judge Vedder found that the proper proration of subsidies is 7% of Dover SD's final BEF combined with 7% of Dover SD's final SEF allocation for the 2021-2022 school year. Thus, he found that the total amount of subsidy to be prorated is $1,014,875.10 ($858,537.97(BEF) + $156,337.13(SEF)). *Id.* Judge Vedder agreed with the Department that while Northern York SD should receive this additional subsidy, in the amount of $1,014,875.10, this amount should be subtracted from Dover SD's subsidy allocation. *Id.*

Both Dover SD and Northern York SD filed notices of appeal from Judge Vedder's January 20, 2024 order. Dover SD challenges only the portion of Judge Vedder's order finding that no indebtedness or obligation is due and owing to Dover SD by Northern York SD. It makes no complaint regarding his order that Northern York SD should receive an additional state subsidy of $1,014,875.10. Northern York

13

SD cross-appealed only as to the subsidy portion and only as a protective measure to ensure that the subsidy proration is carried out consistently with Judge Vedder's order. In particular, it seeks clarification as to whether Judge Vedder's order on subsidies requires transfer of $3,044,625.30 (three years of already-distributed subsidies) from Dover SD to Northern York SD and a future reallocation of state subsidies from the Board of Education in accordance with Judge Vedder's calculation. We have consolidated the appeals. For the reasons set forth below, we vacate Judge Vedder's order and remand.

### III. Dover School District's Appeal[5]

Dover SD raises two issues.[6] First, it argues that Judge Vedder erred by concluding that the coordinate Jurisdiction Rule precluded its claim. Second, it argues that Judge Vedder erred by disregarding this Court's directive on remand.

#### A. *Law of the Case Doctrine – Coordinate Jurisdiction Rule*

The coordinate jurisdiction rule is one of the distinct rules encompassed by the broader "law of the case" doctrine.[7] *Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003). Our Supreme Court previously has explained that, under the coordinate

---

[5] In its Statement of Questions Involved, Dover SD initially raised five issues. However, it has informed the Court that the trial court resolved three of those issues in its Rule 1925(a) opinion, leaving only two for our consideration. (Dover SD's Br. at 6-7.)

[6] This Court's review is limited to considering whether the trial court erred as a matter of law or abused its discretion. *Porter II*, 44 A.3d at 1208, n.8.

[7] Among rules that comprise the law of the case doctrine are that:

> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995).

14

jurisdiction rule, "[j]udges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Ryan v. Berman*, 813 A.2d 792, 795 (Pa. 2002) (quoting *Starr*, 664 A.2d at 1331). Beyond promoting the goal of judicial economy, the coordinate jurisdiction rule serves "(1) to protect the settled expectations of the parties; (2) to insure [sic] uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* (quoting *Starr*, 664 A.2d at 1331). The Supreme Court has recognized that departure from the coordinate jurisdiction rule is permitted when there has been an intervening change in the controlling law, **a substantial change in the facts or evidence giving rise to the dispute in the matter**, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Starr*, 664 A.2d at 1332 (emphasis added).

Dover SD argues that the coordinate jurisdiction rule did not require Judge Vedder to give legal effect to Judge Linebaugh's November 10, 2014 order because Judge Linebaugh's order dealt with an entirely different set of circumstances than the ones presented before Judge Vedder. Dover SD argues that, naturally, the representation made by its counsel in November 2014 about debt allocation was "tethered to that timeline." (Dover SD's Br. at 9.) It maintains that its counsel's representation was simply an acknowledgement of the prevailing circumstances at a finite point in time made in anticipation of something that was supposed to happen in the near future, *i.e.*, by July 1, 2015. It asserts that its counsel made the representation about Dover SD's **then-current** debts and obligations, which have since changed during the six plus years that ensued from November 2014 until the transfer took effect on July 1, 2021.

15

It is well settled that when there is a change of material fact between the first ruling on an issue and the second opportunity to rule on that same issue, the coordinate jurisdiction rule does not apply. *Ryan*, 813 A.2d at 795 (citing *Starr*, 664 A.2d 1332). In *Starr*, 664 A.2d at 1332, our Supreme Court explained that, "where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a *per se* abuse of discretion in overruling or vacating the prior order." Thus, the crucial question here is whether, after Judge Linebaugh's order of November 10, 2014, there were financial developments occurring since its issuance that constituted "a substantial change in facts or evidence" so that Judge Vedder could properly entertain and decide the debt allocation issue. We find that there were.

First, the debt allocation under 24 P.S. § 2-242.1(a) is to "be determined at the time the transfer occurs." This was clearly stated in *Porter II*. The actual figures to be used to determine how much Northern York SD owes Dover SD could not possibly be determined **before** the transfer actually occurred on July 1, 2021. Therefore, the mere fact that the transfer did not end up occurring until **six years later**, on July 1, 2021, alone, constitutes a substantial change in circumstances that affected the reasoning expressed by Judge Linebaugh in his November 10, 2014 order.

Moreover, when Judge Linebaugh entered the November 10, 2014 order, the parties contemplated that the transfer of Washington Township to Northern York SD would take effect at the beginning of the immediately following school year, *i.e.*, in July 2015. Dover SD's representation to Judge Linebaugh that it had no debt to transfer was true in November 2014 - but it is not true now. The facts evolved significantly from the time Judge Linebaugh entered his November 10, 2014 order. As Dover SD points out, it had every right to incur debt during that period. *See* Section

16

231 of the School Code, 24 P.S. § 2-231.[8] The intervening changes in the facts in the time between Judge Linebaugh's and Judge Vedder's orders clearly warranted a new look at the question. Thus, the coordinate jurisdiction rule did not obligate Judge Vedder to adhere to Judge Linebaugh's November 10, 2014 order. Therefore, we are constrained to vacate Judge Vedder's January 20, 2024 order and remand the matter for a determination of the amount of indebtedness and obligations of Dover SD, if any, that Northern York SD shall assume and pay.

### B. *Disregard of Remand Instructions*

As an alternative reason in support of reversal, Dover SD argues that Judge Vedder disregarded this Court's directive on remand. It maintains that our directions on remand were highly specific and required Judge Vedder to "determine the amount . . . of indebtedness and obligations of [Dover SD], [if any, that Northern York SD] shall assume and pay, and, a statement prorating the State subsidies payable between or among [Dover SD] and [Northern York SD]." *WTISD II*, 233 A.3d at 996. Dover SD contends that Judge Vedder's disregard of that directive violated Pennsylvania Rule of Appellate Procedure 2591, which requires that judges sitting on

---

[8] Section 231 of the School Code provides:

> While proceedings are pending in court for the changing of any boundary lines of any city, incorporated town, borough, or township, or the creation of any new city, borough, or township, the board of school directors in every school district to be affected by such change of boundary lines or creation of a new municipality shall be permitted to levy and assess a school tax and incur debts for the purpose of purchasing ground or building or enlarging a school building, in the same manner as though such proceedings were not pending in court for the changing of any boundary lines of any such city, incorporated town, borough, or township, or the creation of any new city, borough, or township.

24 P.S. § 2-231.

17

the court of common pleas are bound to effectuate remand orders from this Court. That rule provides:

> On remand of the record the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court and, except as otherwise provided in such order, Rule 1701(a) (effect of appeals generally) shall no longer be applicable to the matter.

Pa.R.A.P. 2591.

In response, Northern York SD argues that this Court did not hold or suggest that Judge Linebaugh's findings were inappropriate or should be revisited. It contends that Dover SD "seeks to take advantage of the *dicta* in Judge (now Justice) Brobson's *WTISD II* opinion, which merely cited the School Code in describing the trial court's obligations." (Northern York's Br. at 23.)

*Dicta* has been defined as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential. . . ." *Commonwealth v. Lee*, 935 A.2d 865, 867 n.4 (Pa. 2007) (quoting Black's Law Dictionary 1100 (7th ed. 1999)). *See also Stellwagon v. Pyle*, 133 A.2d 819, 823 (Pa. 1957) (language employed in an opinion "must be related to the issue decided; when it goes beyond that, it must be considered dictum").

A statement contained in an opinion is decisional, rather than constituting mere *dicta*, where the statement is "an intricate embodiment of the court's determination." *Commonwealth ex rel. Fox v. Swing*, 186 A.2d 24, 26 (Pa. 1962). *See also Firearm Owners Against Crime v. Lower Merion Township*, 151 A.3d 1172, 1178-79 (Pa. Cmwlth. 2016) (holding that Township's characterization of the language in a case was not *dicta* because it was essential to the court's holding).

In *WTISD II*, we were tasked with deciding whether the Board erred in disapproving WTISD's application for approval of its assignment from Dover SD to

18

Northern York SD. After concluding that the Board did so err, we reversed the Board's denial of the application and remanded the matter to the Board with direction to revise the York County plan of organization of school districts to reflect the assignment of WTISD to Northern York SD effective with the 2021-2022 school year. *WTISD II*, 233 A.3d at 996. The Board was further directed to then transfer the matter back to the trial court "to oversee implementation of the reassignment. In particular, but without limitation, the [trial] court must determine the amount . . . of indebtedness and obligations of [Dover SD], [if any, that Northern York SD] shall assume and pay." *Id.*

Our instructions to the Board and the trial court were essential to our ultimate holding that WTISD was entitled to the assignment. In order to fully effectuate the assignment under the School Code, the debt allocation under 24 P.S. § 2-242.1(a) must be determined. At the time we issued our remand instructions, the Court was keenly aware of the protracted history of the case, the time that lapsed between Judge Linebaugh's November 10, 2014 order and our decision, and that, according to *Porter II*, the debt allocation under 24 P.S. § 2-242.1(a) must be based on the actual transfer, not a "predicted date" of transfer. Our direction on remand to determine the debt allocation was an "intricate embodiment of the court's determination" and not "*dicta*" as alleged by Northern York SD. As such, Judge Vedder was bound to proceed in accordance with that aspect of our decision. Pa.R.A.P. 2591.

### IV. Northern York SD's Appeal

The subsidy proration is subject to appeal only because Northern York SD seeks to clarify the trial court's instructions to the Board. Dover SD did not appeal or take issue with Judge Vedder's subsidy decision or proration, so neither party seeks to reverse that part of Judge Vedder's order.

19

Judge Vedder ordered that Northern York SD "shall receive an additional subsidy of $1,014,875.10, with this self-same amount being deducted from Dover SD's subsidy allocation, effective as of the 2021-2022 school year." (Trial ct. op, January 22, 2024, at 2.) "This figure was calculated as 7% of Dover's final BEF plus 7% of Dover SD's final SEF allocations." *Id.* at 16-17, 20-21.

Northern York SD wants to ensure that the language "as of the 2021-2022 school year" is interpreted to mean beginning with 2021-2022 and then each subsequent year indefinitely. Since Dover SD's BEF and SEF allocations were already distributed by the Department for the years 2021-2022, 2022-2023, and 2023-2024, and were identical each year, Northern York SD contends that Dover SD should be required to transfer these funds, which total $3,044,625.30 (the trial court's proration calculation times three), to Northern York SD.

Northern York SD asks this Court to make clear that the Department needs to reallocate what would otherwise have been 7% of Dover SD's final BEF plus 7% of Dover SD's final SEF allocations going forward, beginning with the 2025-2026 school year. Given that we are vacating and remanding Judge Vedder's order, we will leave it to the trial court to provide Northern York SD with the clarification it seeks.

## V.     Conclusion

For the foregoing reasons, we vacate the trial court's January 20, 2024 order and remand the matter so that the trial court can determine the amount of indebtedness and obligations of Dover SD, if any, that Northern York SD shall assume and pay as of the date of transfer, July 1, 2021, and to hold a hearing if necessary and issue a new decision.

Jurisdiction relinquished.


_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in the decision for this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Northern York County School District | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 175 C.D. 2024 |
| | : | |
| Dover Area School District, | : | |
|     Appellant | : | |
| | : | |
| | : | |
| Northern York County School District, | : | |
|     Appellant | : | |
| | : | |
| v. | : | No. 176 C.D. 2024 |
| | : | |
| Dover Area School District | : | |

## *ORDER*

AND NOW, this 8th day of October, 2025, the January 20, 2024 order of the Court of Common Pleas of York County (trial court) is hereby **VACATED,** and the matter is **REMANDED** to the trial court for further action in accordance with the accompanying Opinion.

    Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge